Jordanna G. Thigpen (SBN 232642)
**THIGPEN LEGAL, P.C.**
9465 Wilshire Blvd. Suite 300
Beverly Hills, CA 90212
Tel: (310) 210-7491
Fax: (310) 362-0456
Email: jt@thigpenlegal.com

Benjamin C.R. Lockyer (*pro hac vice* pending)
**LOCKYER LAW LLC**
6515 W. Archer Ave.
Chicago, IL 60638
Tel: (773) 340-0011
Email: ben@lockyerlaw.com

*Attorneys for Plaintiffs Shemar DaCosta, Pholoso MofoKeng, Miles Jackson-Lea, Olakunle Olatunji, R.M., a minor child, M.A., a minor child, D.P., a minor child, and K.S., a minor child, each through their parents as Court appointed guardians ad litem*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

SHEMAR DACOSTA, an individual; PHOLOSO MOFOKENG, an individual, MILES JACKSON-LEA, an individual, OLAKUNLE OLATUNJI, an individual, R.M., a minor child, M.A., a minor child, D.P., a minor child, and K.S., a minor child, each through their parents as Court appointed guardians ad litem

Plaintiff,

v.

YEEZY, LLC, a limited liability corporation; YE FKA KANYE WEST, an individual; MILO YIANNOPOULOS, an individual,

Defendants.

Case No. 24-cv-05547-PA-E

**AMENDED COMPLAINT FOR DAMAGES**

1. **Forced Labor Under the Alien Tort Statute**
2. **Cruel, Inhuman, or Degrading Treatment Under the Alien Tort Statute**
3. **Failure to Pay Minimum Wage (FLSA, 29 U.S.C. § 201 et seq.)**
4. **Failure to Pay Overtime (FLSA, 29 U.S.C. § 201 et seq.)**
5. **Hostile Work Environment – California FEHA**
6. **Discrimination – California FEHA**
7. **Failure to Prevent Harassment – California FEHA**
8. **Fraud – Intentional Misrepresentation**
9. **Quantum Meruit – Work Already Done**

**[DEMAND FOR JURY TRIAL]**

## AMENDED COMPLAINT

1. Plaintiffs Shemar DaCosta ("DaCosta"); Pholoso Mofokeng ("Mofokeng"); Miles Jackson-Lea ("Jackson-Lea"); Olakunle Olatunji ("Olatunji"); R.M., a minor child ("R.M."), M.A., a minor child ("M.A."), D.P., a minor child ("D.P."), and K.S., a minor child ("K.S."), each through their parents Marie Morgan, Zalan Antall, Nicole Pitsos, and Nidaal Sharaan (collectively, the "Plaintiffs"), by and through their attorneys Thigpen Legal, P.C. and Lockyer Law LLC, present their Complaint against Defendants Yeezy LLC ("Yeezy"), Ye f/k/a Kanye West ("Ye"), and Milo Yiannopoulos ("Yiannopoulos") (collectively, the "Defendants"), and alleges as follows.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1350, this Court has federal question jurisdiction over this dispute pursuant to the Alien Tort Statute ("ATS"), for the alleged violations of international human rights law. The ATS provides federal jurisdiction for "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

3. Jurisdiction is also conferred on this Court pursuant to 28 U.S.C. §§ 1331 as to the 3rd and 4th causes of action because they arise under the laws of the United States, including the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, et seq.

4. This Court may also exercise supplemental jurisdiction over Plaintiff's state statutory and common law claims for relief on the grounds they arise out of the same case or controversy as the civil action over which this Court has original jurisdiction. 28 U.S.C. § 1367(a).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Yeezy LLC is a limited liability company organized in the State of Delaware and registered to do business in California, and with a primary place of business in, Los

Angeles, California, and individual Defendants Ye f/k/a "Kanye West" and Milo Yiannopoulos are citizens of the State of California.

6. In addition, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Los Angeles County in the Central District of California.

7. Plaintiffs are properly joined in this action pursuant to Rule 20(a)(1) as they jointly seek relief arising out of the same series of transactions or occurrences and the same questions of law or fact are common to all Plaintiffs.

8. Defendants are properly joined in this action pursuant to Rule 20(a)(2) as their involvement in this case arises out of the same series of transactions or occurrences and the same questions of law or fact are common to all Defendants.

## PROCEDURAL REQUIREMENTS

9. Prior to filing this Complaint, Plaintiffs filed charges of harassment and discrimination in violation of the FEHA with the California Civil Rights Department ("CCRD") against the Defendants. The administrative charges arose out of the same facts alleged herein.

10. On June 29, 2024, Plaintiffs received a "right to sue" letter as to all Defendants from the CCRD.

11. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

12. Plaintiff Shemar DaCosta is an individual and a citizen of the United States and the State of New York. He is Black.

13. Plaintiff Pholoso Mofokeng is an individual and a citizen of and resident in the nation of South Africa. He is of African ethnicity.

14. Plaintiff Miles Jackson-Lea is an individual and a citizen of and resident of the United Kingdom.

15. Plaintiff Olaolawukunle Olatunji is an individual and a citizen of and resident in the nation of Nigeria. He is of African ethnicity.

16. R.M. is a 16-year-old minor and is a citizen of and resident of the United Kingdom. R.M. is represented by his mother Marie Morgan.

17. M.A. is a 15-year-old minor and a citizen of the nation of Hungary. Plaintiff M.A. is represented by his father Zalan Antal.

18. D.P. is a 15-year-old minor and a citizen of the United States and the State of California. D.P. is an American citizen. D.P. is represented by his mother Nicolitsa Pitsos.

19. K.S. is a 17-year-old minor, and currently a resident in the nation of the United Arab Emirates. K.S. is an American citizen, and is of Jordanian ethnicity. K.S. is represented by his father Nidal Sharaan.

20. Ye f/k/a “Kanye West” is an individual and a citizen of the State of California.

21. Yeezy LLC is a Limited Liability Company organized in the State of Delaware and registered to do business in, and with a primary place of business in, Los Angeles, California.

22. Milo Yiannopoulos is an individual and a citizen of the State of California.

23. Plaintiff is informed and believes and thereon alleges that each of the Defendants acted in all respects pertinent to this action as the agent or employee of the other Defendants, carried out a joint scheme, business plan, or policy in all respects hereto, and therefore the acts of each of the Defendants are legally attributable to the other defendants. All actions of each defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other defendant.

// //

## FACTUAL ALLEGATIONS

24. Plaintiffs all worked at Defendants' direction on the YZYVSN application ("App") being developed by Defendants and were subjected to the harsh working conditions overseen by each of the Defendants, as set forth herein.

25. Defendant Ye, formerly known as "Kanye West," is an American recording artist, entrepreneur, and controversial media figure. Defendant Ye is known for his recordings as well as his various business ventures through his brand, which he markets variously as Yeezy or YZY.

26. Upon information and belief, Defendant Ye owns several properties in the State of California, including Calabasas, Malibu, and West Hollywood.

27. Upon information and belief, Defendant Ye is also a member, manager, shareholder, and/or owner of several companies organized and located in the State of California.

28. Defendant Yeezy, LLC is Defendant Ye's personal business and the company that he operates his business ventures through. Defendant Yeezy maintains employees in the State of California who participated in and directed the unlawful conduct described herein.

29. In filings with the California Secretary of State, Defendant Yeezy describes its principal place of business as 20020 Parthenia Street, Northridge, California 91324. However, during the conduct at issue in this action, Defendant Yeezy operated from 8025 Melrose Ave., Los Angeles, California 90046.

30. Defendant Milo Yiannopoulos is a controversial political commentator and former news editor.

31. Defendant Yiannopoulos has been the subject of past media scrutiny and was previously accused of advocating pedophilia after the emergence of several video clips in which he said that sexual relationships between 13-year-old boys and adults can be 'perfectly consensual' and positive experiences for such boys.

32. Defendant Yiannopoulos was the Chief of Staff for Defendant Yeezy beginning on or about 2022 until at least May 15, 2024.

33. Upon information and belief, Defendant Yiannopoulos was tasked with overseeing various projects and business ventures on behalf of Defendant Yeezy and Ye.

34. Defendant Yeezy utilized a remote workspace based in California to carry out its business activities and commit the unlawful acts against Plaintiffs described herein in further detail. On information and belief, Defendant Yeezy utilizes a California-based remote workspace for all of its business activities, employing individuals from different countries and time zones as its practice and as a matter of course.

35. As set forth herein, all relevant decisions and directions by Defendant Yeezy were issued from Defendant Yeezy's principal place of business in Los Angeles, California.

36. Employees of Defendant Yeezy often, if not exclusively, work remotely via several digital, online applications such as Discord, Zoom, and Google Meet and via several instant communication and/or texting services such as Slack, WhatsApp, iMessage, and cellular texting.

***Creation and Acquisition of the YZYVSN App***

37. In the early Spring of 2024, Defendants sought unique opportunities to promote Ye's latest album releases "Vultures" and the upcoming "Vultures 2."

38. In March 2024, Defendant Ye made several public announcements about wanting to launch his next album, Vultures Volume 2, on his own streaming service/website.

39. Upon information and belief, Defendant Ye wanted his own streaming platform or website so that he could avoid sharing profits with digital streaming platforms, such as Spotify, Tidal, Apple Music, YouTube Music, etc.

40. Due to Defendant Ye's public statements, several app developer groups began separate projects to develop an app in the hopes that Defendant Ye would acquire it and invite them to work for him.

41. The app developer groups were comprised of several different groups of developers from all over the world that were fans of Defendant Ye and his music.

42. In relevant part, the groups referred to themselves as YZYVSN and YZYAPP.

43. On March 17, 2024, YZYVSN employees contacted Defendant Ye's Instagram account.

44. On March 28, 2024, Defendant Ye's Instagram account contacted the YZYVSN Instagram account to start discussions and learn more about the YZYVSN app.

45. On March 29, 2024, Defendant Ye, and Yeezy employees Christophe De Ryo, Ami Sueki, and Johnathan Solorzano, acting as representatives of Defendants Ye and Defendant Yeezy, met with select members of the YZYVSN development team, including Massimo "Venza" Venezia and Cameron "Cam" Cross, via Google Meet for the first time to discuss the YZYVSN app.

46. Defendants tasked a member of the development team, a 20-year-old developer from Argentina, named Massimo "Venza" Venezia ("Mr. Venezia") to be the head of the development team.

47. Defendant Yeezy informed Mr. Venezia that he would be a manager at Yeezy and promised him the opportunity to come to Los Angeles, California.

48. On or around April 7, 2024, Defendant Yiannopoulos told Mr. Venezia of the app development team that they would acquire the YZYVSN App for a promise of $120,000 upon completion of the app (the "Acquisition").

49. In a group chat with some of the YZYVSN developers on April 7, 2024, Defendant Yiannopoulos reported that "Ye is very happy" and that:

> "[t]hose we did not extend immediate offers to may nonetheless see their names in the agreement. I will try to find a place for everyone. Johnathan our CTO will be reaching out to designers this week as we have a full time vacancy for front end web design elsewhere in the company."

50. On or around April 10, 2024, Defendant Yiannopoulos and a Defendant Yeezy employee identified as "Hasan" provided the YZYVSN development team through Mr. Venezia with a sale to acquire the YZYVSN app.

51. As of early April 10, 2024, the combined workers on the YZYVSN team comprised approximately 30 developers, designers, and marketers from various countries all over the world and included children and young adults aged 14-24.

52. The YZYAPP development team was compromised of approximately 10 developers compromised minors and young adults and was absorbed by the YZYVSN development team.

53. As a part of the Acquisition, Defendants Ye and Yeezy required all minor developers (those less than 18 years of age) working on the YZYVSN project to sign "volunteer" agreements and all members, regardless of age, to sign non-disclosure agreements.

54. Upon information and belief, Defendant Yiannopoulos oversaw the signing of the non-disclosure agreements ("NDA").

55. In having the YZYVZN developers sign the NDA, Defendant Yiannopoulos required all of the developers, including each of the Plaintiffs herein, to send to him pictures of their government IDs and other documents reflecting their ages and citizenship.

56. At all times described herein, Defendants Yiannopoulos, Ye, and Yeezy, and each of them, were directly and personally aware that YZYVSN's development team included minor children of various ages from various countries, including the minor Plaintiffs herein. Defendants Ye, Yeezy, and Yiannopoulos were all personally

aware that the minor Plaintiffs were working on the development of the YZYVSN app.

57. Despite this, on or around April 16, 2024, Defendant Yiannopoulos and Mr. Venezia began to pressure the minors to sign the NDA under the threat that they would be kicked off the project and would not receive any payment for their work if they did not sign immediately.

58. Defendants through Mr. Venezia made representations to each of the Plaintiffs that they needed to sign the NDA to receive payment, and that payment would be made once they signed.

59. The minor Plaintiffs felt they had no choice but to sign the NDAs or lose their right to be paid.

60. On or around April 2, 2024, Defendant Yiannopoulos communicated directly to the YZYVSN developers.

61. In the recorded meeting, Defendant Yiannopoulos commented on the competition between the app development teams and noted that YZYVSN had "won."

62. Defendant Yiannopoulos announced to the group chat that Defendants' goal behind working with the YZYVSN team (which by then included the YZYAPP team), which included Plaintiffs, "was to cheaply acquire developer talent, doing a better and cheaper job than expensive agencies."

***Development of the YZYVSN App and Involvement of Yeezy Employees***

63. By April 7, 2024, Defendant Yeezy's employees Defendant Yiannopoulos, Yeezy Chief Technology Officer Johnathon Solorzano, Edward "Ed" Contreras, and Chad Spencer were added to the combined App development team's group chats on the messaging-platform Discord.

64. Defendant Yeezy employees joined the YZYVSN project to oversee the development of the YZYVSN app, and work with the YZYVSN Developers, including Plaintiffs.

65. The Yeezy employees that oversaw the App development included Yeezy Chief of Staff Milo Yiannopoulos, Yeezy Chief Technology Officer Johnathan Solorzano, and Yeezy employees identified as Edward "Ed" Contreras, Chad Spencer, and "Sevvy."

66. On April 10, 2024, a meeting was held between Ye and a small group of workers from the YZYVSN app.

67. A majority of the YZYVSN developers and the Plaintiffs were not permitted to attend the meeting.

68. Upon information and belief, and on or about April 16, 2024, Defendant Yeezy intentionally, but secretly hired a select group of only white/Caucasian workers on the YZYVSN App development team.

69. Upon information and belief, Defendant Yeezy and Defendant Yiannopoulos approved the hirings of a secret group of developers to save costs and to have these workers oversee the rest of the group.

70. Specifically, Defendant Yeezy hired Massimo "Venza" Venezia ("Mr. Venezia") to oversee the App's development as a "project lead" being paid $105,000 per year.

71. Defendant Yeezy hired Cameron Cross as a senior developer for $125,000 per year.

72. Defendant Yeezy hired Jalil Faquiri as a developer for $105,000 per year.

73. Defendant Yeezy hired Connor Power as a UI Designer for $35,000 per year.

74. Defendant Yeezy hired Allessandro Giunta as a UI designer for $35,000 per year.

75. Defendant Yeezy hired Ricky Dean Bro as designer for $35,000 per year.

76. Immediately after the acquisition of the App by Defendant Yeezy, on or around April 10, 2024, the working environment on the Discord group chat – one of the

methods used by the developers, including Plaintiffs, to communicate and perform their work – became hostile.

77. Development group chats on the Discord messaging service were filled with harassment regarding age, race, gender, sexual orientation, and national origin/ethnicity. Some team members were called "slaves" while another group chat referred to team members as "new slaves."

78. This harassment was perpetuated by Defendant Yiannopoulos.

79. On April 10, Defendant Yiannopoulos sent a message to the group chat and used a Black/brown skin emoji to refer to Plaintiff DaCosta, and also sent a message of calling a younger member of the group a "school shooter."

80. Members of the development team, including each of the Plaintiffs, were regularly and viciously bullied for their ages, races, genders, sexual orientation, and national origins/ethnicities.

81. After Defendant Yeezy acquired the App on April 7, 2024, App development work could only be accomplished through hidden side groups known to only select members of the team. Plaintiffs were bullied and threatened that if they did not agree to perform work for long hours without breaks, they would not be paid.

82. Many members of the app development team, including minors, and including each of the named Plaintiffs, were required to work long hours without pay, which required them to sacrifice school and personal time.

83. On several instances, the Plaintiffs were required to work through the night in 12-hour shifts and forego sleep.

84. Defendants Ye, Yeezy, and Yiannopoulos were aware of these conditions, because throughout the entire development process, Defendant Yiannopoulos and other Yeezy employees, including Johnathan Solorzano, Ed Contreras, and Chad Spencer, monitored and supervised the project.

85. On Defendants Ye and Yeezy's behalf, each of these supervisors personally directed the project team, including Plaintiffs, via Discord. They also held project meetings either on Discord voice channels or virtual meeting spaces like Zoom or Google Meet.

86. Members of the app development team, including minors, and including each of the Plaintiffs, were tasked with performing work on Defendant Yeezy's pornography venture, YZY Porn.

87. In the group chats that Defendants Ye and Yeezy maintained in order to direct Plaintiffs' work, pornographic images for the App's development were discussed and the minors were exposed to pornography.

88. Following the completion of the App in early May 2024, Defendant Yeezy and Defendant Yiannopoulos repeatedly informed Plaintiffs that they would be paid for their work as long as they agreed to the working conditions, did not complain, and performed the work when Defendants demanded it be done.

89. Defendant Yiannopoulos and a lawyer for Yeezy identified as "Jackie" made several promises of payment that never materialized.

***Rush Week and Completion of the App***

90. On April 22, 2024, in an interview on the Download podcast, Defendant Ye officially announced the release date of his then upcoming album, "Vultures 2," to be May 3, 2024.

91. On April 28, 2024, Defendant Yiannopoulos made clear to the YZYVSN workers tasked with programming and developing the app that Defendant Ye wanted the App's release to coincide with the release of Vultures 2.

92. Defendants Ye and Defendant Yiannopoulos public and private statements pressured the development team, including Plaintiffs, to finish the App as quickly as possible.

93. Beginning April 28, 2024, YZYVSN workers tasked with app development and design, including Plaintiff's DaCosta and R.M., were told they were now in "rush week" and were required to complete development of the App before May 3, 2024, to correspond with Defendant Ye's release of Vultures 2.

94. Upon information and belief, "rush week" began on April 28, 2024.

95. YZYVSN app developers, including Plaintiff DaCosta and R.M., did not know before April 28th that they would have to participate in rush week, or that they would be required to finish development of the App by the May 3, 2024 deadline.

96. On Sunday, April 28, 2024 at about 9:09PM ET, Defendants' representative Mr. Venezia contacted Plaintiff DaCosta via text indicating that both were to attend an urgent meeting with Defendant Ye at 11:00PM ET. In this text conversation, Mr. Venezia told Plaintiff DaCosta that "[Ye] wants to launch the app Friday[.] Time to grind[.]"

97. From approximately 10:30pm EST to 11:30 EST, two separate meetings occurred. The first meeting occurred at 10:30PM EST ("10:30 Meeting") between Plaintiff DaCosta and a YZYVSP app designer named Ekpere "KP" Omenuko, and Defendants' representatives' Mr. Venezia and Johnathan Solorzano.

98. During the 10:30 Meeting, Defendant Yeezy employees and YZYVSN workers discussed that features would need to be cut from the App in order to complete it on time. Mr. Solorzano told everyone that Defendant Yeezy would pay everyone for their work. Mr. Solorzano also complained that he was being forced to work odd hours as an employee of Defendant Yeezy.

99. At about 10:45PM ET, the second meeting started ("10:45 Meeting"). It was attended by Defendant Yiannopoulos, Yiannopoulos' assistant Sebastien, Mr. Solorzano, and YZYVSN workers Plaintiff DaCosta, Massimo Venezia, Cameron Cross, Jalil Faquiri, and developers identified as Connor Power, "Robert," and "Sloan."

100. Defendant Yiannopoulos explained to the YZYVSN workers in attendance that he had convinced Defendant Ye not to attend the meetings that night, but that Defendants wanted the App to be finished and released by May 3, 2024.

101. Defendant Yiannopoulos provided the YZYVSN workers with strict directions regarding the App's development, discussing aspects of the App that needed additional work and what needed to be abandoned in order to meet the new deadline.

102. Near the end of the meeting, Yiannopoulos informed the YZYVSN workers in attendance, including Plaintiffs DaCosta and R.M., that the App needed to be finished by Wednesday, May 1, 2024.

103. Before adjourning, Defendant Yiannopoulos told the YZYVSN workers that were present, including Plaintiffs DaCosta and R.M., that the strict deadline should be kept strictly confidential and that what was discussed in the meeting should not even be discussed with other YZYVSN workers.

104. Following the meeting, Mr. Solorzano, using a Yeezy company credit card, purchased the necessary developer accounts for GitHub so that the various development groups could remotely share development files and collaborate on shared documents in real-time.

105. Throughout the rush week, each of the Plaintiffs, including the minors, worked long, hard hours every day without pay.

106. Due to the differences in time zones, minors and adult YZYVSN workers working in Europe and the Middle East were forced to sacrifice sleep, and work, school attendance and other educational requirements, and to attend meetings throughout the middle of the night.

107. Throughout rush week, Plaintiffs and other YZYVSN workers were required to and did regularly provide updates of their progress with Defendant Yiannopoulos and other employees of Defendant Yeezy, including but not limited to Mr. Solarzano.

108. On behalf of Defendants Ye and Yeezy, Defendant Yiannopoulos and employees of Defendant Yeezy managed, directed, and supervised Plaintiffs' work the entirety of rush week by providing direction and approving and rejecting changes, and responding to the updates Plaintiffs provided with further direction.

109. The App was completed on Thursday, May 2, 2024.

***The Hostile Work Environment and Abusive Working Conditions***

110. At all times alleged in this Complaint, the Plaintiffs were under the supervision and control of Defendant Yiannopolos and Defendant Yeezy, both directly and through various Yeezy employees and contractors.

111. Beginning April 7, 2024, Defendant Yiannopoulos and Defendant Yeezy directed Plaintiffs' and other YZYVSN workers through the App's "channel" (chat groups) on Discord (the "Discord Channel").

112. The Discord Channel functioned as an online workplace precisely in the same way a conference room or physical office space would do – participants received direction, exchanged information, such as ideas, orders, and documents and images, and responded to messages and requests.

113. Defendants at all times had the responsibility and ability to ensure a safe, inclusive working environment that did not tolerate hostile and/or intolerable conditions.

114. Defendants had the responsibility and authority to discipline a member and/ or implement rules to maintain a safe and inclusive working environment that was free from discrimination.

115. Defendants were aware, or reasonably should have been aware, of the conditions in the Discord Server, and Defendants Ye and Yiannopoulos read, sent, and participated in the messages and communications in the Discord Channel.

116. However, Defendants did not ensure a safe and inclusive working environment, nor one free of discrimination. Despite having direct knowledge of the

toxic, abusive, and exploitative working environment, Defendants did nothing to stop or otherwise prevent it.

117. Instead, the work environment perpetuated by the Discord Channel, and conveyed to Plaintiffs in other communications with Defendants' employees that supervised and directed them, was hostile, characterized by extreme racism and bullying, and exposure to inappropriate content.

118. On several occasions, Black and African members of the development team, including Plaintiffs DaCosta, Olatunji, and Mofokeng were mocked on the Discord Channel for their skin color, national origin, and ethnicity and called "slaves."

119. Plaintiff DaCosta, who identifies as Black, conveyed repeatedly that he was not comfortable with the use of the term, slaves and Black hand emojis being used, and asked that it stop.

120. Following this, employees of Defendant Yeezy, including Mr. Venezia, made a new Discord channel labelled "New Slaves" for newcomers to the app development team.

121. The Discord channels "New Slaves" were not renamed until Plaintiff DaCosta, who is Black, demanded that they be changed.

122. Additional racial slurs and derogatory terms were often used to mock, demean, and discriminate against Plaintiff DaCosta and other Black and African developers.

123. For example, the Discord Channel, Defendant Yiannopoulos, who is Caucasian, would use Black and Brown skinned emojis to communicate with Black and Brown members of the development team.

124. Defendant Yeezy employees, including Mr. Venezia, created secret groups of developers that were working directly with Yeezy employees to complete the development of the App for the Vultures 2 release.

125. Defendant Yiannopoulos commented that he knew about Mr. Venezia creating groups of only ethnically white YZYVSN workers.

126. Mr. Venezia, acting under the control and at the direction of Defendants Yeezy and Yiannopoulos, created secret sub-groups of developers based on race and national origin.

127. Further, only white/Caucasian members of the YZYVSN app development team were secretly given promises of jobs at Yeezy as developers.

128. Minors on the development team, including Plaintiffs M.A. and D.P. were mocked and bullied for their age.

129. The youngest developer at the time was Plaintiff D.P, a 14-year-old.

130. Pictures of infants were distributed in the Discord Channel to insinuate and/or refer to the minors, including D.P. as children or infants.

131. Defendant Yeezy and its employees, including Yiannopoulos, Solorzano, Contreras, and Spencer as members and participants of the Discord Channel, witnessed all of the foregoing.

132. At no point did the employees of Defendants Yeezy ever bother to regulate or moderate the Discord Channel to stop or prevent the workplace harassment, discrimination, or hostile environment.

***Yeezy Porn and Pornography in the Workplace***

133. During the development of the App, Defendant Ye and Defendant Yeezy announced on April 24, 2024, that they would be starting an adult-film and pornography venture known as "Yeezy Porn."

134. Upon information and belief, on or around April 27, 2024, Defendant Ye's wife Bianca Censori sent a YZYVSN worker a file sharing link of pornography for the Yeezy Porn App.

135. Pictures of pornography related to Yeezy Porn were openly disseminated on the Discord Channel.

136. No guardrails were put in place to prevent the underaged YZYVSN workers from working on Yeezy Porn, or to prevent them from being exposed to and being forced to view pornography to perform their work.

***Failure to Make Payment of Wages and Unlawful Conditioning of Payment of Wages Upon Waiver of Legal Claims***

137. In the week leading up to April 28, 2024, the YZYVSN worker asked for a status on update on payment of their wages.

138. Following the development of the App, each of the YZYVSN workers, including Plaintiffs, requested and expected payment of their wages for their work.

139. On or around May 1, 2024, the YZYVSN app was completed and provided to Defendant Yeezy.

140. On or around May 1, 2024, Mr. Venezia was promised a job "doing management at Yeezy" and that he would be flying to Los Angeles, California on or around May 3, 2024.

141. On or around May 7, 2024, a dispute arose between Defendant Yiannopoulos and Mr. Venezia regarding payment on the project.

142. On May 10, 2024, Mr. Venezia informed the YZYVSN workers that the Acquisition deal and promise to purchase the YZYVSN app was not real.

143. On May 13, 2024, Mr. Venezia sent to the rest of the team members including Plaintiffs, a screen shot of messages between himself and Defendant Yiannopoulos, discussing payment of wages.

144. Mr. Venezia informed the YZYVSN workers that Defendant Yiannopoulos had misled everyone regarding whether they would be paid for their work, and the promises of continued work.

145. In the conversation, Defendant Yiannopoulos promised that workers would be paid on May 14, 2024. However, they were not paid on May 14, 2024.

146. On May 14, 2023, Plaintiffs and the YZYVSN workers requested an urgent meeting with Defendant Yiannopoulos to discuss their missing wages.

147. On or around May 15, 2024, Defendant Yiannopoulos and Mr. Venezia informed Defendant Yeezy that some YZYVSN workers intended to organize together to bring a lawsuit regarding their exploitation, the child labor, and other labor violations.

148. On May 17, 2024, Mr. Venezia agreed to send, and did send, a letter to Defendants on behalf of the YZYVSN workers regarding the missing wages.

149. As a result of this, Plaintiffs in this matter have suffered threats, coercion intimidation, and harassment for requesting their wages, and their wages have essentially held hostage even though lawfully due.

***Damages***

150. The working conditions on the App were created under Defendants' supervision and from their demands to meet harsh deadlines.

151. Throughout the app development process, YZYVSN workers were forced to attend meetings at various times and unusual hours.

152. The timing of meetings to meet app development deadlines required adult and minor YZYVSN workers located in time zones in Europe and the Middle East to attend meetings at 3:00 AM and 5:00 AM local time.

153. Many members of the app development team described the stress of workplace conditions, the constant deadline changes, and the cult-like behavior of other workers on the YZYVSN workers as hostile, intimidating, and harassing.

154. These conditions caused various YZYVSN workers, including the Plaintiffs, to experience anxiety, depression, and trips to doctors regarding health complications caused by the stress of the working conditions.

***Additional Allegations Specific to Each Plaintiff***

***Shemar DaCosta***

155. Plaintiff Shemar DaCosta is an app developer, and a YZYVSN worker that experienced all of the conditions described above while working for Defendants.

156. Plaintiff DaCosta is of Jamaican descent and identifies as Black, and a citizen of the United States and a resident of the State of New York. He is 23 years old.

157. During the development, Plaintiff DaCosta was delegated to a Discord channel named "New Slaves," which he perceived as blatantly racist.

158. The channel was only removed after Plaintiff DaCosta raised the issue to Mr. Venezia that he believed including him and other Black and African developers on the team in a channel called "New Slaves" was racist.

159. Additionally, Yeezy employees such as Defendant Yiannopoulos used communications, such as messaging platform emojis to repeatedly comment on DaCosta's race and make implicit racist jokes.

160. Specifically, Defendant Yiannopoulos used Black-skinned emojis to taunt DaCosta and other Black and African developers in the Discord Channel and other communications.

161. Despite making significant contributions during his work for Defendants during "rush week," Plaintiff DaCosta was never paid or given any credit for his work.

162. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff DaCosta has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

163. Defendants agreed and promised that DaCosta would be paid for his work for Defendants once it was completed, and he did perform the work and complete the work by May 2, 2024. However, as of the time of filing of this action, Plaintiff DaCosta has not been paid at all.

164. Plaintiff DaCosta's emotional damages are exacerbated and directly attributed to being called a slave, being mocked and degraded for his skin color, and not being paid after working long hours and under immense pressure to meet the May 3, 2024 deadline.

***Pholoso Mofokeng***

165. Plaintiff Pholoso Mofokeng is a 3D artist and designer, and a software engineering student with an emphasis in multi-media design, and a YZYVSN worker that experienced all of the conditions described above while working for Defendants.

166. Plaintiff Mofokeng is of South African descent and a resident and citizen of South Africa. He is 20 years old.

167. During the time Mofokeng performed work for Defendants, Mr. Venezia would often ignore Plaintiff Mofokeng and other YZYVSN workers from Africa.

168. During the project, Plaintiff Mofokeng worked on a team of other YZYVSN workers doing digital design, including minors, to make 3D digital models for use in 3D animation videos for the App, including a 45-second promotion video to promote the YZYVSN app launch.

169. Plaintiff Mofokeng faced exclusion from key communications and decisions, further marginalizing his role and contributions within the YZYVSN work teams.

170. For example, Plaintiff Mofokeng was not permitted to be a part of the secret "whites only" development groups or have facetime or interactions with Yeezy employees in the development group, such as Edward Contreras, Jonathan Solorzano, or Chad Spencer.

171. Plaintiff Mofokeng found out about the existence of the side-groups when inquiring about tasks from one of the lead YZYVSN App developers.

172. Thereafter, Plaintiff Mofokeng was placed by lead developer Massimo in groups with developers from Venezia's home country of Argentina, where Spanish was spoken in the group chats.

173. Mofokeng does not speak Spanish and protested that he would not be able to perform his work, but nothing was done.

174. Being forced to attempt to perform work in a workspace in which he could not communicate was a further effort to marginalize Plaintiff Mofokeng based on his race and national origin, and to force him to abandon his work and the pay he was owed.

175. Defendant Yiannopoulos through Mr. Venezia pressured Plaintiff Mofokeng into signing documents, such as non-disclosure agreements (NDAs), often with the implication that he would receive certain benefits only if he complied.

176. The demands placed on Plaintiff Mofokeng disrupted his academic schedule, forcing him into late-night, uncompensated meetings that negatively affected his studies and physical and mental well-being.

177. Despite making significant contributions during his work for Defendants during "rush week," Plaintiff Mofokeng was never paid or given any credit for his work.

178. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff Mofokeng has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

179. Defendants agreed and promised that Mofokeng would be paid for his work for Defendants once it was completed, and he did perform the work and complete the work by May 2, 2024. However, as of the time of filing of this action, Plaintiff Mofokeng has not been paid at all.

180. Plaintiff Mofokeng's emotional damages are exacerbated and directly attributed to being called a slave, being mocked and degraded for his skin color, and not being paid after working long hours and under immense pressure to meet the May 3, 2024 deadline.

***Miles Jackson-Lea***

181. Plaintiff Miles Jackson-Lea was a lead app developer and a YZYVSN worker that experienced all of the conditions described above while working for Defendants.

182. Plaintiff Jackson-Lea is a resident and citizen of England, UK. He is a university student and is graduating in July 2024 with a Bachelor of Arts degree with honors in Cyber Security. He is 25 years old.

183. Plaintiff Jackson-Lea began work on the YZYVSN app development team on March 11, 2024.

184. Plaintiff Jackson-Lea was the primary coder and designer of the original version of the YZYVSN app that was shown to the Defendants.

185. After the Acquisition, Plaintiff Jackson-Lea reported directly to and was supervised by Defendant Yeezy employee Edward Contreras.

186. Defendants required Plaintiff Jackson-Lea was required to attend meetings and work long hours in the evening, between 7 P.M. and 2 A.M. Greenwich Mean Time ("GMT"). Plaintiff Jackson-Lea was forced to sacrifice his sleep, personal time, and schoolwork to attend meetings.

187. During the "rush week" beginning on April 28, 2024, Plaintiff Jackson-Lea worked long hours through the middle of the night and beyond to meet the project's arbitrary one week deadline.

188. Despite making significant contributions during his work for Defendant, especially during "rush week," Plaintiff Jackson-Lea was never paid or given any credit for his work.

189. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff Jackson-Lea has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

190. Defendants agreed and promised that Jackson-Lea would be paid, and he did perform the work and complete the work by May 2, 2024. However, as of the time of filing of this action, Plaintiff Jackson-Lea has not been paid at all.

***Olakunle Olatunji***

191. Plaintiff Olakunle Olatunji was a marketer on the YZYVSN app development team and experienced all of the conditions described above while working for Defendants.

192. Plaintiff Olatunji of African descent and a citizen of Nigeria. He is 24 years old.

193. During the development, Defendant Yeezy employees, including Mr. Venezia, would often ignore Plaintiff Olatunji and other members of the development team from Africa.

194. In the Discord Channel, Defendant Yeezy's employees including Mr. Venezia mocked Plaintiff Olatunji because he has an accent when he speaks English.

195. Plaintiff Olatunji faced exclusion from key communications and decisions, further marginalizing his role and contributions within the team.

196. For example, Plaintiff Olatunji was not permitted to be a part of the secret "whites only" development groups or have facetime or interactions with Yeezy employees such as Edward Contreras, Johnathan Solorzano, or Chad Spencer.

197. Thereafter, like Plaintiff Mofokeng, Plaintiff Olatunji was placed by lead developer Massimo Venezia's home country of Argentina, where Spanish was spoken in the group chats.

198. Plaintiff Olatunji does not speak Spanish and protested that he would not be able to perform his work, but nothing was done.

199. Being forced to attempt to perform work in a workspace in which he could not communicate was a further effort to marginalize Plaintiff Olatunji based on his race and national origin, and to force him to abandon his work and the pay he was owed.

200. The demands placed on Plaintiff Olatunji forced him into late-night, uncompensated work for Defendants that negatively affected his physical and mental well-being.

201. Despite making significant contributions during his work for Defendants, Plaintiff Olatunji was never paid or given any credit for his work. Plaintiff Olatunji was consistently told by Defendant Yeezy's employees, including but not limited to Mr. Venezia, that if Plaintiff Olatunji completed his work, he would be paid.

202. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff Olatunji has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

203. As of the time of filing of this action, Plaintiff Olatunji has not been paid at all.

204. Plaintiff Olatunji's emotional damages are exacerbated and directly attributed to being called a slave, being mocked and degraded for his accent, and not being paid after working long hours and under immense pressure to meet the Defendants' arbitrary deadlines.

***R.M. One of the Minor Children***

205. Plaintiff R.M. is a 16-year-old minor, a resident and citizen of England, UK, and a YZYVSN worker that experienced all the conditions described above while working for Defendants.

206. Plaintiff R.M. was initially hired to work on the YZY Vision app and began contributions on March 12, 2024, prior to the official acquisition by Yeezy.

207. Plaintiff R.M. despite his young age, worked extensive hours every day under the supervision of Yeezy employees, including the direct supervision of Yeezy employees, including Mr. Venezia, Cameron Cross, and Jalil Faquiri.

208. Plaintiff R.M. was a member of the secret “whites-only” development group of YZYVSN workers.

209. Plaintiff R.M. was told by Mr. Venezia that they were working on getting him a formal offer to work for Yeezy like Mr. Venezia, Cameron Cross, and Jalil Faquiri.

210. Plaintiff R.M. and the other minors were often required to work 12-hour days, sacrificing their education, school attendance, and personal time.

211. As a minor, R.M. struggled to balance his schoolwork with Defendants’ demands that he work.

212. Plaintiff R.M. participated in meetings scheduled late at night, ranging from 11 PM to 2 AM, which disrupted his school schedules and personal life and coordinated by Defendant Yiannopoulos.

213. Plaintiff R.M. was often the sole minor participant in these meetings.

214. These meetings frequently extended past midnight, causing further disruption to Plaintiff R.M.'s education and grades.

215. R.M. was a minor when he was asked to sign an NDA and the “volunteer” agreement.

216. Plaintiff R.M. felt pressured into signing with the implication that he would not be paid for the work he had already done or allowed to receive wages he had been promised as a condition of agreeing to work for Defendants, if he did not comply.

217. Plaintiff R.M. was assigned to a Discord channel in which racist and demeaning messages and content were freely shared regarding a Black colleague called "Shemar."

218. Plaintiff R.M. worked for countless hours on design projects using tools like Photoshop, Illustrator, and Figma. Despite his significant contributions, he was never compensated for his labor.

219. Plaintiff R.M. was directed to be in the rush week group, and directed by Defendant Yiannopoulos to perform around-the-clock intensive work sessions to finalize the app.

220. Despite making significant contributions during his work for Defendants including during "rush week," Plaintiff R.M. was never paid or given any credit for his work.

221. Plaintiff R.M. was consistently told by Defendant Yeezy's employees, including but not limited to Mr. Venezia, that if he completed his work, he would be paid.

222. The promises of payment were consistently broken, leading to a highly stressful and demoralizing work environment for Plaintiff R.M.

223. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff R.M. has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

224. Defendants agreed and promised that R.M. would be paid for his work for Defendants once it was completed, and he did perform the work and complete the work by May 2, 2024. However, as of the time of filing of this action, Plaintiff R.M. has not been paid at all.

***M.A., one of the Minor Plaintiffs***

225. Plaintiff M.A. is 15 years old, a resident and citizen of Hungary, a YZYVSN worker that experienced all of the conditions described above while working for Defendants.

226. Plaintiff M.A. despite his young age, worked extensive hours every day under the supervision of Yeezy employees, including the direct supervision of Ward "Ed," Contreras, a Yeezy Employee.

227. Plaintiff M.A. and the other minors were often required to work 12-hour days, sacrificing their education, school attendance, and personal time, during the time school was in session.

228. Plaintiff M.A. was required to attend meetings that were scheduled at inconvenient times, including early mornings and late nights, which disrupted his school schedules and personal life. As a minor, he struggled to balance his schoolwork with Defendants' demands that he work.

229. Plaintiff M.A. was exposed to inappropriate content, including pornography, which was shared within the team's communication channels.

230. Plaintiff M.A. viewed pornogrpaghy as a consequence of viewing the group chats used to disseminate workplace communications, and where pornography related to the Yeezy Porn venture was shared.

231. During the signing of the NDA and a volunteer agreement Plaintiff M.A. was a minor.

232. Plaintiff M.A. felt pressured into signing, with the implication that he would not be paid for the work he had already done or allowed to receive wages he had been promised as a condition of agreeing to work for Defendants, if he did not comply.

233. Plaintiff M.A. worked for countless hours on design projects using tools like Photoshop, Illustrator, and Figma. Despite his significant contributions, he was never compensated for his labor.

234. Plaintiff M.A. was not initially aware that there was secret "whites only" development groups and that only selected white members of the team were being offered jobs by Defendant Yeezy.

235. Despite making significant contributions during his work for Defendants, Plaintiff M.A.was never paid or given any credit for his work.

236. Plaintiff M.A.was consistently told by Defendant Yeezy's employees, including but not limited to Mr. Venezia, that if he completed his work, he would be paid.

237. The promises of payment were consistently broken, leading to a highly stressful and demoralizing work environment for Plaintiff M.A.

238. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff M.A. has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

239. Defendants agreed and promised that M.A. would be paid for his work for Defendants once it was completed, and he did perform the work and complete the work by May 2, 2024.

240. However, as of the time of filing of this action, Plaintiff M.A. has not been paid at all.

***D.P., one of the Minor Plaintiffs***

241. Plaintiff D.P. is 14 years old, and a resident of California and a citizen of the United States, and an original member of the YZYVSN app development team and experienced all the conditions described above while working for Defendants.

242. Plaintiff D.P., despite his young age, worked extensive hours every day under the supervision of Yeezy employees, including the direct supervision of Edward "Ed," Contreras, a Yeezy Employee.

243. Plaintiff D.P. and the other minors were often required to work 12-hour days, sacrificing their education, school attendance, and personal time.

244. Plaintiff D.P. was required to attend meetings that were scheduled at inconvenient times, including early mornings and late nights, which disrupted his school schedules and personal life. As a minor, he struggled to balance his schoolwork with Defendants' demands that he work.

245. Plaintiff D.P. was exposed to inappropriate content, including pornography, which was shared amongst the YZYVSN Discord and work communication channels.

246. During the signing of the NDA and a "volunteer" agreement Plaintiff D.P. was a minor.

247. Plaintiff D.P. felt pressured into signing, with the implication that he would not be paid for the work he had already done, or allowed to receive wages he had been promised as a condition of agreeing to work for Defendants, if he did not comply.

248. Plaintiff D.P. worked for countless hours on design projects using tools like Photoshop, Illustrator, and Figma. Despite his significant contributions, he was never compensated for his labor.

249. Despite making significant contributions during his work for Defendants, Plaintiff D.P. was never paid or given any credit for his work.

250. Plaintiff D.P. was consistently told by Defendant Yeezy employees, including but not limited to Mr. Venezia, that if he completed his work, he would be paid.

251. The promises of payment were consistently broken, leading to a highly stressful and demoralizing work environment for Plaintiff D.P.

252. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff D.P. has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

253. Defendants agreed and promised that D.P. would be paid for his work for Defendants once it was completed, and he did perform the work and complete the work by May 2, 2024.

254. However, as of the time of filing of this action, Plaintiff D.P. has not been paid at all.

***K.S. One of the Minor Plaintiffs***

255. Plaintiff K.S. is 17 years old, a resident of the United Arab Emirates, and a citizen of the United States.

256. Plaintiff K.S. is a YZYVSN worker that experienced all of the conditions described above while working for Defendants.

257. Plaintiff K.S. was originally hired by Defendants to handle promotional marketing in support of the App.

258. Despite his young age, K.S. worked long hours producing graphic designs, images, and digital marketing content for App's launch under the supervision of Yeezy employees, including the direct supervision of Edward "Ed," Contreras, a Yeezy Employee.

259. Plaintiff K.S. sent his designs and design mock-ups to Ed from the Yeezy team for review and feedback.

260. As Plaintiff K.S. continue to work diligently on the project, he was also given a lead role in marketing and named one of Mr. Venezia's "deputies." As Mr. Venezia's "deputy," K.S. was tasked with assisting Mr. Venezia with various tasks.

261. As a lead in marketing K.S. was required to run the YZYVSN social media marketing and development marketing campaigns and promotional content.

262. Both roles required K.S. to work additional hours in Gulf Standard Time, the furthest time zone from the Americas.

263. As a minor, K.S. struggled to balance his schoolwork with Defendants' demands that he work at odd hours throughout the night and early morning.

264. Plaintiff K.S. was required to attend meetings that were scheduled at inconvenient times, including early mornings and late nights, which disrupted his school schedules and personal life.

265. Plaintiff K.S. and the other minors were often required to work 12-hour days, sacrificing their education, school attendance, and personal time.

266. Plaintiff K.S.' sleep was deeply affected and his work in school was affected. During the YZYVSN work meetings, Plaintiff K.S. sometimes fell asleep.

267. Plaintiff K.S. complained that he was a minor and could not work that many hours, Mr. Venezia under the supervision and control of Defendant Yeezy employees, including Defendant Yiannopoulos, frequently showed no remorse and often told Plaintiff K.S. and other workers that they don't have any real excuse to miss any meetings.

268. As just one example, a meeting was scheduled at 4:00 AM Gulf Standard Time (GST) in the United Arab Emirates. This meeting was with Defendant Yiannopoulos and took place on a school night.

269. Plaintiff K.S. proceeded to participate in the meeting, and woke up at 4:00AM GST to do so, but Yiannopoulos announced without warning he was moving the meeting to 4:30 AM GST. The meeting finished at 6:00 AM GST and K.S. went to school.

270. On or around April 10, 2024, K.S. witnessed that Massimo Venezia began to create the whites-only "side groups."

271. On April 21, 2024, K.S. was asked to sign an NDA and a "volunteer" agreement as a minor.

272. Plaintiff K.S. felt pressured into signing with the implication that he would not be paid for the work he had already done, or allowed to receive wages he had been promised as a condition of agreeing to work for Defendants, if he did not comply.

273. Plaintiff K.S. was hesitant on signing the documents and did not initially sign. Plaintiff K.S.'s delay led to him being locked out of many files and threatened with the loss of his pay. Plaintiff K.S. was also told that no one in the group was going to be paid until Plaintiff K.S. signed. Plaintiff K.S., asked, but was not given the fair chance for a lawyer to review the NDA. He felt pressured, harassed, and badgered to sign the volunteer agreement and NDA.

274. Under these threats, Plaintiff K.S. eventually signed the NDA on April 23, 2024.

275. Plaintiff K.S. worked for countless hours on design projects using tools like Figma. Despite his significant contributions, he was never compensated for his labor.

276. Despite making significant contributions during his work for Defendants, Plaintiff K.S. was never paid or given any credit for his work. Plaintiff K.S. was consistently told by Defendant Yeezy employees, including Mr. Venezia, that if he completed his work, he would be paid. The promises of payment were consistently broken, leading to a highly stressful and demoralizing work environment for Plaintiff K.S.

277. Due to the working conditions that he was subjected to while working for Defendants, including the hostile working environment, the extensive hours, and the withholding of his pay, Plaintiff K.S. has suffered emotional distress, anxiety, humiliation, anguish, depression, and anxiety.

278. Defendants agreed and promised that K.S. would be paid for his work for Defendants once it was completed, and he did perform the work and complete the work by May 2, 2024. However, as of the time of filing of this action, Plaintiff K.S. has not been paid at all.

**FIRST CAUSE OF ACTION**

**FORCED LABOR UNDER THE ALIEN TORT STATUTE**

**By Plaintiffs Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., & K.S.**

**Against All Defendants**

279. Plaintiff incorporates and re-alleges the allegations of Paragraphs 1-154, 165-240, and 255-278 above, as though set forth fully herein.

280. Plaintiffs Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., & K.S. suffered psychological coercion and were forced to work under the false promise that they would be paid when they completed their work on the App. They were never paid, this was a deliberate scheme by Defendants to take advantage of their youth, lack of education, and fear.

281. Defendants used labor extracted from children and young adults through the means described herein, including trickery and coercion, and financial deprivation. As to the minor Plaintiffs (R.M., M.A., & K.S.), by requiring them to work around the clock for days on end, Defendants required "work which, by its nature or the circumstances in which it is carried out, is likely to harm the health, safety or morals of children," which qualifies as "one of the worst forms of child labor" within ILO Convention No. 182. Defendants also directed and required that these minor workers perform work and services in a workplace with pornography openly shared, which also qualifies as "one of the worst forms of child labor" within ILO Convention No. 182.

282. Further, Defendants knew and recklessly disregarded the fact that the created a systematic, exploitative labor system, which was endured by Plaintiffs and numerous other minors and young adults.

283. Defendants Ye and Milo Yiannopoulos participated in the venture that was Yeezy LLC. Each Defendant knowingly "received anything of value" from the venture, which was the benefit of Plaintiffs' work and labor. Defendants knew or should have known that the venture had engaged in forced labor, and child labor, given Plaintiffs' and other workers' complaints, and that the Minor Plaintiffs were under the age of 18, given that they required all Plaintiffs to provide identification. As previously alleged, Defendants have knowingly benefited from forced labor and forced child labor for their businesses.

284. Defendants' conduct has established and maintained an organized venture thar depends on a steady supply of forced child laborers, including the minor Plaintiffs herein.

285. Defendants' conduct in violation of customary international law either directly caused these injuries, or Defendants are liable for these injuries because they provided knowing, substantial assistance to the direct perpetrators, or because the direct perpetrators were agents, and/or employees of Defendants or of companies that are the alter egos of Defendants.

286. The forced labor perpetuated by the venture that all Defendants are responsible for has caused Plaintiff to sustain significant injuries, as well as pain and suffering, extreme and severe mental anguish, and emotional distress, and will continue to experience such pain and suffering. The conduct of Defendants was malicious, fraudulent and/or oppressive and done with a willful and conscious disregard for the Plaintiffs' rights and for the deleterious consequences of Defendants' actions. The Plaintiffs are thereby entitled to compensatory and punitive damages in amounts to be proven at trial.

287. All Defendants as key members of and participants in Defendant Ye's ventures and are liable for the injuries caused to the Plaintiffs by the venture's forced labor system. Further, Defendants are all jointly and severally liable for the injuries caused to Plaintiffs by Defendants' joint actions and participation in the plans and programs that depend upon forced or forced child labor.

288. Plaintiffs are entitled to recover damages as set forth in the prayer below.

## SECOND CAUSE OF ACTION

## CRUEL, INHUMAN, OR DEGRADING TREATMENT UNDER THE ALIEN TORT STATUTE

**By Plaintiffs Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., & K.S.**

**Against All Defendants**

289. Plaintiff incorporate and re-allege allegations of Paragraphs 1-154, 165-240, and 255-278 above, as though set forth fully herein.

290. The discrimination and psychological intimidation described herein had the intent and the effect of grossly humiliating and debasing the Plaintiffs, forcing them to act against their will and conscience, inciting fear and anguish, and breaking their physical and/or moral resistance.

291. Defendants' actions forced the Plaintiffs to work long hours throughout the night and under fear and pressure of failing Defendant Ye, to labor for Defendants' economic benefit; and in doing so the Plaintiffs were forced to suffer severe psychological abuse and agony, and threats of financial injury.

292. Such conduct was in violation of international law and was contrary to the laws of the United States.

//

//

**THIRD CAUSE OF ACTION**

**FAILURE TO PAY MINIMUM WAGE**

**(VIOLATION OF THE FAIR LABOR STANDARDS ACT, FLSA)**

**By All Plaintiffs Against All Defendants**

293. Plaintiffs incorporate and re-allege the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

294. Child Labor Regulation No. 3, 29 C.F.R. § 570.35, limits the hours and the times of day that 14- and 15-year-olds may work to: (1) outside school hours; (2) no more than 3 hours on a school day, including Fridays; (3) no more than 8 hours on a non-school day; (4) no more than 18 hours during a week when school is in session; (5) no more than 40 hours a week when school is not in session; and (6) between 7 a.m. to 7 p.m., except between June 1 and Labor Day when the evening hour is extended to 9 p.m.

295. Defendants, and each of them, knew that Plaintiff D.P. was 14 years of old, and Plaintiff M.A. was 15 years old, at the time they performed work for Defendants. Despite federal law restricting the number of hours that Plaintiffs M.A. and D.P. could work, Defendants routinely required Plaintiff M.A. and D.P. to work in violation of each of the restrictions in 29 C.F.R. § 570.35. These Defendants have also employed additional minor children under 18 years of age, including Plaintiffs R.M. and K.S., and suffered or permitted them to work excessive, inhumane hours.

296. Defendants are employers who did willfully violate Sections 12(c) and 15(a)(4) of the FLSA, 29 U.S.C. §§ 212(c) and 215(a)(4), by employing minor children in occupations, for periods, and under conditions which constitute oppressive child labor in an enterprise engaged in commerce or in the production of goods for commerce, in excess of 40 hours per week as to Plaintiff M.A. and D.P.

297. While there is no private right of action for enforcement of the FLSAs child labor laws, employers must pay their employees a statutorily prescribed minimum wage and employers are prohibited from requiring employees to work more than forty hours per week unless the employees are compensated at one and one half times their regular hourly rate. 29 U.S.C. § 202, 206, and 207(a)(1).

298. Under 29 U.S.C. § 216(b), any employer who violates §§ 206 or 207 shall be liable to the employee in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages.

299. Defendants employed all Plaintiffs, minor and adult – R.M., M.A., D.P., K.S., DaCosta, Mofokeng, Jackson-Lea, and Olatunji – to work for less than minimum wage by paying each of them $0 for their labor during the entire time Defendants employed Plaintiffs. Defendants did not pay Plaintiffs a minimum wage, nor any overtime wages, thereby violating 29 U.S.C. §§ 206, 207.

300. Defendants' failure to pay Plaintiffs one-and-a-half times their regular hourly rate for all hours worked in excess of 40 hours per work week was knowing, willful, and in reckless disregard of their rights.

301. As a proximate result of Defendants' conduct, acts and omissions, Plaintiffs have suffered special damages in the form of lost earnings, benefits and/or out of pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of these Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

## FAILURE TO PAY OVERTIME UNDER THE FLSA (29 U.S.C. §§ 207, 216)

## By All Plaintiffs Against All Defendants

302. Plaintiffs incorporate and re-allege the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

303. At all relevant times, Defendants were an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203 and grossed more than $500,000 in each of the last three calendar years. At all relevant times, Defendants employed Plaintiffs.

304. The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees for all hours worked and overtime at a rate of not less than one and one-half times the regular rate of pay for work in excess of forty hours in a workweek.

305. As alleged above, in violation of 29 U.S.C. § 207, when Plaintiff and other members worked in excess of forty hours in a workweek, Defendants did not include all remuneration paid to them in their regular rate for purposes of calculating overtime. The foregoing conduct, as alleged, constitutes all willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

306. Plaintiffs seek damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

307. Plaintiffs seek recovery of their attorneys' fees and costs of action to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## FIFTH CAUSE OF ACTION

## FEHA - HARASSMENT/HOSTILE WORK ENVIRONMENT - CAL. GOV. CODE § 12940(j)

**By All Plaintiffs Against All Defendants**

308. Plaintiffs incorporate and re-allege the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

309. Defendants subjected Plaintiffs to a hostile work environment in violation of California Fair Employment and Housing Act (FEHA), California Government Code §§ 12900 *et seq.* (the "California FEHA"). Defendants engaged in a pattern and practice of harassment and abuse based on Plaintiffs' race, color, national origin, age, and other protected characteristics.

310. Plaintiffs experienced severe and pervasive harassment that altered the conditions of their employment and created an intimidating, hostile, and offensive work environment. Specific instances of harassment include, but are not limited to:

311. Racially charged comments and derogatory directed at Black and African members of the development team, including Plaintiffs DaCosta, Olatunji, and Mofokeng. These comments include but are not limited to Defendant Yeezy employees, including Mr. Venezia, referring to developers as "slaves" and ridiculing Plaintiff Olatunji's accented English.

312. Mr. Venezia under the supervision and control of Defendant Yeezy employees created a Discord channels labeled "New Slaves", which were racially offensive and discriminatory.

313. Defendant Yiannopoulos' use of Black and brown-skinned emojis in Discord Channels to taunt and demean Black and African Plaintiffs created an atmosphere of racial mockery and disrespect.

314. Mr. Venezia's marginalization of non-white members from key communications and decisions created a hostile work environment.

315. Plaintiffs like Mofokeng and Olatunji were excluded from critical meetings and placed in work groups where they could not effectively communicate, further alienating and discriminating against them.

316. Mr. Venezia's bullying and mocking of minor Plaintiffs based on their age, including sharing images of infants to refer to them as children or infants, was

under the supervision and control of Defendant Yeezy and its employees, including Defendant Yiannopoulos.

317. Mr. Venezia subjected Plaintiffs like M.A. and D.P. to constant age-related harassment and belittlement, impacting their ability to contribute meaningfully.

318. The Plaintiffs' exposure to pornography was under the supervision and control of the Defendants.

319. Plaintiff D.P. was exposed to and worked on Yeezy Porn and was exposed to explicit materials, creating a highly inappropriate and distressing work environment.

320. Defendant Yeezy employees, including Defendant Milo Yiannopoulos, actively participated in and perpetuated this hostile work environment through their actions and communications.

321. Defendant Yiannopoulos, among others, made derogatory remarks, enforced discriminatory practices, and failed to address the ongoing harassment and abuse.

322. Defendant Yeezy employees, including Defendant Yiannopoulos and Mr. Venezia, failed to take reasonable steps to prevent and correct the discriminatory and harassing behavior, despite being fully aware of the hostile work environment.

323. Defendants' inaction and tacit approval of such behavior exacerbated the hostile work environment, allowing it to persist and intensify.

324. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered substantial emotional distress, mental anguish, anxiety, depression, humiliation, and loss of enjoyment of life. The hostile work environment created by Defendants severely impacted Plaintiffs' well-being and ability to work effectively.

325. In engaging in the conduct alleged herein, Defendants acted oppressively, maliciously, fraudulently, and/or outrageously towards Plaintiffs, with conscious

disregard for their known rights and with the intention of causing, and/or recklessly disregarding the probability of causing, unjust and cruel hardship to Plaintiffs. Therefore, an assessment of punitive damages should be made against Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future unlawful conduct.

326. Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to the California FEHA.

**SIXTH CAUSE OF ACTION**

**RACE/NATIONAL ORIGIN DISCRIMINATION-**

**CALIFORNIA FEHA**

**By Plaintiffs DaCosta, Mofokeng, and Olatuniji Against Defendants Ye and Yeezy LLC**

327. Plaintiffs incorporate and re-allege the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

328. California FEHA prohibits discrimination against an employee because of race and national origin.

329. Defendants discriminated against Plaintiffs DaCosta, Mofokeng, and Olatunji because of their race and national origin in the following ways:

a. Ostracism by their managers;
b. Public humiliation in front of colleagues;
c. Harassing Plaintiffs when they made complaints about the unlawful working conditions they were experiencing;
d. Denial of necessary training;
e. Denial of training opportunities;
f. Denial of promotions;
g. Provision of unfair, discriminatory, and retaliatory scheduling of meetings and work-related obligations;

h. Refusal to include them in the "whites only" working groups in which their non-Black and non-African colleagues were placed.

i. Refusal to pay them;

j. Failing to investigate allegations of wrongful conduct, including discrimination and a hostile work environment, that was directed at Plaintiff DaCosta;

330. As a result of the aforesaid violations, Plaintiffs suffered damages in an amount which is currently un-ascertained, including but not limited to lost earnings, benefits, and/or out-of-pocket expenses in an amount according to proof at the time of trial. Plaintiffs will request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

331. In engaging in the conduct alleged herein, Defendants acted oppressively, maliciously, fraudulently, and/or outrageously towards Plaintiffs, with conscious disregard for their known rights and with the intention of causing, and/or recklessly disregarding the probability of causing, unjust and cruel hardship to Plaintiffs. Therefore, an assessment of punitive damages should be made against Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future unlawful conduct.

332. Plaintiffs are also entitled to reasonable attorneys' fees and costs pursuant to the California FEHA.

**SEVENTH CAUSE OF ACTION**

**FEHA – FAILURE TO PREVENT EMPLOYMENT HARASSMENT – CAL. GOV. CODE § 12940(k)**

**By All Plaintiffs Against Defendants Ye and Yeezy**

333. Plaintiffs incorporate and re-allege the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

334. It is unlawful for an employer in the State of California to fail to take reasonable steps necessary to prevent discrimination and harassment from occurring, a mandate that includes preventing workplace discrimination and harassment based on age, race and national origin.

335. Defendants Ye and Yeezy was well aware, or should have been aware, of their obligations to prevent discrimination of any type in their workplace. However, rather than take action to stop race, age, and national origin discrimination in their workplaces, Defendants have done nothing.

336. Plaintiffs repeatedly complained to Defendants about discrimination and harassment in the workplace. In response, has come radio silence, even in the face of additional harassment, with no action to assure equality of opportunity and a workplace free of age, race, and national origin hostility.

337. Defendants have not taken the steps necessary to prevent discrimination and harassment in their workplace. Evidence of this failure is seen in the repeated and continuing mistreatment of minor, Black, and African-origin employees.

338. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered substantial emotional distress, mental anguish, anxiety, depression, humiliation, and loss of enjoyment of life. The hostile work environment created by Defendants severely impacted Plaintiffs' well-being and ability to work effectively. In addition, Plaintiffs suffered loss of wages/salary, benefits, and other forms of compensation in an amount which is currently unascertained. Plaintiff will therefore request leave of the court to amend this Complaint to state the amount of all such damages when they have been ascertained or upon proof at the time of trial.

339. Defendants' conduct was intentional, willful, and in reckless disregard of Plaintiffs' rights under the California FEHA, justifying the award of punitive damages. Defendants' actions were carried out with the wrongful intention of injuring

Plaintiffs, from an oppressive and improper motive amounting to malice, and in conscious disregard of Plaintiffs' rights.

**EIGHTH CAUSE OF ACTION**

**FRAUD – INTENTIONAL MISREPRESENTATION**

**By All Plaintiffs Against All Defendants**

340. Plaintiffs incorporate and re-allege the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

341. Defendants, by and through their agents and representatives, made material misrepresentations to Plaintiffs that they would be paid for the YZYVSN App and compensated for their work for Defendants Yeezy LLC and Ye. These misrepresentations included promises of financial compensation, employment opportunities, and additional benefits.

342. Specifically, Defendants represented to Plaintiffs that they would be compensated for their work on the YZYVSN App and that they would receive additional employment opportunities and benefits upon completion of the YZYVSN App. Defendant Yeezy's representatives, including Milo Yiannopoulos and Mr. Venezia, repeatedly assured Plaintiffs of payment and further job prospects.

343. Defendants knew these representations were false at the time they were made or made them recklessly without regard for their truth. Internal communications among Defendants' representatives indicate that they never intended to honor their promises and were instead focused on exploiting Plaintiffs' labor for minimal cost.

344. Defendants intended for Plaintiffs to rely on these misrepresentations to induce them to work on the YZYVSN application under harsh and abusive conditions without proper compensation. Defendants specifically targeted young and inexperienced developers, including minors, leveraging their enthusiasm and naivety.

345. Plaintiffs reasonably relied on Defendants' misrepresentations, as they had no reason to doubt the promises made by Defendants and their representatives.

Plaintiffs were repeatedly told that their hard work and dedication would be rewarded financially and with further employment, which led them to invest significant time and effort into the project and endure harsh conditions to complete their work.

346. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered damages, including but not limited to, unpaid wages, emotional distress, anxiety, humiliation, anguish, and depression. Plaintiffs sacrificed personal time, education, and other opportunities based on the false assurances of Defendants.

347. Defendants' conduct was willful, wanton, and malicious, warranting the imposition of punitive damages. Defendants not only failed to compensate Plaintiffs but also subjected them to a hostile work environment, discrimination, and exposure to inappropriate content.

348. Defendants, and each of them, committed the acts alleged herein maliciously, with the wrongful intention of injuring Plaintiffs, from an oppressive and improper motive amounting to malice, and in conscious disregard of Plaintiffs' rights. Defendants, and each of them, continued to perpetuate adverse actions against Plaintiffs, including threats, harassment, and intimidation, especially after Plaintiffs inquired about their compensation and expressed concerns about the working conditions. This ongoing and continuous mistreatment entitles Plaintiffs to recover punitive damages from Defendants.

## NINTH CAUSE OF ACTION

## QUANTUM MERUIT – WORK ALREADY DONE

**By All Plaintiffs Against All Defendants**

349. Plaintiffs incorporates and re-alleges the allegations of paragraphs 1 through 278 above, as though set forth fully herein.

350. Plaintiffs provided valuable services to Defendants by working on the development of the YZYVSN application. These services included coding, designing,

marketing, and developing 3D digital models, often requiring long hours and significant personal sacrifices, such as working through the night and sacrificing school and personal time.

351. Plaintiffs performed these services with the reasonable expectation that they would be compensated for their work upon completion of the project. This expectation was based on explicit promises made by Defendants' representatives, including Defendant Yiannopoulos, who assured Plaintiffs of payment for their efforts.

352. Defendants were aware that Plaintiffs expected to be compensated for their services. This awareness is evidenced by repeated communications and meetings where Defendants' representatives, including Defendant Yiannopoulos and other Yeezy employees, promised compensation and discussed payment terms with Plaintiffs.

353. Defendants knowingly accepted and benefited from the services provided by Plaintiffs.

354. Despite these promises and the clear benefit received, Defendants have failed to compensate Plaintiffs for the reasonable value of the services provided. Plaintiffs were misled into believing they would be paid once the application was completed, but no payment was made even after the app’s completion on May 3, 2024.

355. As a direct and proximate result of Defendants' failure to pay for the services rendered, Plaintiffs have suffered damages in an amount to be proven at trial. These damages include, but are not limited to, the value of the services performed, emotional distress, anxiety, and the financial impact of not receiving the promised compensation for their extensive work.

//

//

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment as against Defendants, and each of them, as follows:

1. For unpaid wages and overtime wages and such general and special damages as may be appropriate;
2. For pre-judgment interest on any unpaid overtime wages, overtime wages, or any other amounts owing commencing from the date such amounts were due;
3. Compensatory damages in an amount according to proof;
4. For an accounting for and restitution of the wages unlawfully withheld and retained by Defendant;
5. Damages for emotional distress according to proof;
6. Punitive and exemplary damages according to proof;
7. Civil penalties as permitted under the FLSA;
8. Reasonable attorneys' fees incurred herein pursuant to the FLSA, and reasonable attorneys' fees and experts costs under the California FEHA, and as otherwise provided by law;
9. For costs of suit incurred herein; and
10. For such other and further relief as the Court deems proper.

DATED: September 2, 2024 **THIGPEN LEGAL, P.C.**

By:*Jordanna Thigpen*
Jordanna G. Thigpen
*Attorneys for Plaintiffs*

DATED: September 2, 2024 **LOCKYER LAW LLC**

By: */s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury of all issues triable as a right by jury.

DATED: September 2, 2024 **THIGPEN LEGAL, P.C.**

By: *Jordanna Thigpen*
Jordanna G. Thigpen
*Attorney for Plaintiffs*

DATED: September 2, 2024 **LOCKYER LAW LLC**

By: */s/ Benjamin Lockyer*
Benjamin C.R. Lockyer
*Attorney for Plaintiffs*