**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Evan Miller, State Bar No. 336473
EMiller@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

Attorneys for Defendant,
Yeezy LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEMAR DACOSTA, an individual; PHOLOSO MOFOKENG, an individual, MILES JACKSON-LEA, an individual, OLAKUNLE OLATUNJI, an individual, R.M., a minor child, M.A., a minor child, D.P., a minor child, and K.S., a minor child, each through their parents as Court appointed guardians ad litem,<br><br>Plaintiff,<br><br>vs.<br><br>YEEZY LLC, a limited liability corporation; YE FKA KANYE WEST, an individual; MILO YIANNOPOULOS, an individual,<br><br>Defendants. | Case No.: 2:24-cv-05547-MWC-E<br><br>The Hon. Michelle Williams Court<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YEEZY LLC'S MOTION FOR SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY AND 28 U.S.C. § 1927**<br><br>Date:  April 3, 2026<br>Time:  1:30 p.m.<br>Courtroom: 6A<br><br>Action Filed:  June 29, 2024<br>Fact Disc. Cutoff: January 9, 2026<br>Trial:  July 6, 2026 |

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................3

**I.     INTRODUCTION** .................................................................................5

**II.    LEGAL STANDARD** ............................................................................7

    **A.**   **Sanctions Pursuant to the Court's Inherent Authority**...................7

    **B.**   **Sanctions Pursuant to 28 U.S.C. § 1927 ("Section 1927")**...............9

**III.   ARGUMENT** ........................................................................................10

    **A.**   **Plaintiffs are Liable for Sanctions for Recklessly Pursuing Frivolous Claims Tantamount to Bad Faith** ..............................................................10

    **B.**   **Sanctions Should Be Imposed Against Plaintiffs' Counsel for Recklessly Pursuing This Lawsuit Without Basic Investigation of the Facts or the Law** ..................................................................................16

**IV.    CONCLUSION** ....................................................................................19

MARTORELL LAW APC
Litigation & Trial Counsel

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*,
  976 F.2d 541 (9th Cir. 1992) ................................................................................ 9
*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................... 5, 7, 10
*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) ............................................................................................ 8
*Ent. by J & J, Inc. v. Lee*,
  126 F. App'x 797 (9th Cir. 2005) ..................................................................... 16
*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ..................................................................... 7, 8, 9
*Fink, supra*,
  239 F.3d .............................................................................................................15
*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) ........................................................................... 9
*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) ............................................................................... 9
*Lahiri v. Universal Music & Video Distribution Corp.*,
  606 F.3d 1216 (9th Cir. 2010) ......................................................................... 16
*Mach v. Will Cnty. Sheriff*,
  580 F.3d 495 (7th Cir. 2009) ............................................................................. 7
*Miller v. City of Los Angeles*,
  661 F.3d 1024 (9th Cir. 2011) .................................................................... 8, 15
*Pratt v. California*,
  11 F. App'x 833 (9th Cir. 2001) ........................................................................ 9
*Roadway Exp., Inc. v. Piper*,
  447 U.S. 752 (1980) ..................................................................................... 8, 15
*Rodriguez v. United States*,
  542 F.3d 704 (9th Cir. 2008) ............................................................................. 8
*Saldate v. Wilshire Credit Corp.*,
  268 F.R.D. 87 (E.D. Cal. 2010) ......................................................................... 8
*Salstrom v. Citicorp Credit Servs., Inc.*,
  74 F.3d 183 (9th Cir. 1996) .................................................................. 8, 10, 15

Statutes

28 U.S.C. § 1927 ........................................................................................... Passim
California Labor Code section 1198.5 .................................................................17

1  Rules

2  Rule 11 of the Federal Rules of Civil Procedure..........................................................7

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARTORELL LAW APC
Litigation & Trial Counsel

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Yeezy LLC ("Defendant" or "Yeezy") respectfully submits this motion for sanctions against plaintiffs Shemar Dacosta, Pholoso Mofokeng, Miles Jackson-Lea, Olakunle Olatunji, R.M., M.A., D.P., and K.S. ("Plaintiffs"), and their counsel, Jordanna G. Thigpen and Benjamin C.R. Lockyer ("Plaintiffs' Counsel").

## I. INTRODUCTION

It is only in the rarest of instances that a plaintiff should be sanctioned for their prosecution of a civil lawsuit. To allow otherwise would create a chilling effect that would deter people from rightfully pursuing their claims. This lawsuit, however, is one of those rare instances where sanctions are necessary to compensate a defendant who should not have been hauled into court.

Plaintiffs launched—and have continued to prosecute—an action that is not merely weak on the merits, but objectively implausible on the most basic, dispositive facts. Despite multiple off-ramps to reassess and withdraw their allegations, Plaintiffs doubled down: they repeated core factual assertions in their pleading, reaffirmed them in sworn declarations, and then persisted through discovery while resisting the very discovery requests that would test those assertions. The result here has been exactly the sort of "orderly and expeditious disposition of cases" that is thwarted when parties pursue a meritless lawsuit to impose cost, reputational harm, and leverage rather than to vindicate legitimate rights. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

Yeezy seeks fee-based sanctions under the Court's inherent authority against Plaintiffs for prosecuting claims that Plaintiffs knew—or, at a minimum, recklessly disregarded—were baseless, and for doing so in a manner that is tantamount to bad faith.

The heart of Plaintiffs' case is their insistence that they were "employees" of Yeezy and that Yeezy "acquired" their separate venture (YZYVSN), controlled their "workplace," and is therefore responsible for an extraordinary array of statutory and

common-law claims. However, the record establishes that Plaintiffs themselves were co-owners of YZYVSN, that the documents they possessed and authenticated describe, at most, an unconsummated asset transaction; not an acquisition of an entity, not an employment relationship, and that Plaintiffs lack even the most routine indicia of employment. At the same time, Plaintiffs advanced inflammatory allegations—such as claims involving pornography and minors—that were uniquely damaging, unsupported, and plainly calculated to maximize public and personal harm. On this record, Plaintiffs' litigation posture reflects more than mistake, it reflects a reckless and improper effort to weaponize federal litigation and leverage reputational injury for advantage.

Yeezy seeks sanctions against Plaintiffs' Counsel under the Court's inherent authority and 28 U.S.C. § 1927. Counsel had repeated opportunities to perform—at minimum—a basic investigation of facts and law before filing, and then again when submitting sworn declarations, serving discovery responses, and opposing summary judgment. A cursory inquiry would have revealed that the foundational employment narrative was unsustainable, that Plaintiffs' own documents contradicted it, and that several legal theories asserted were facially defective. Instead of narrowing or withdrawing claims when these defects became undeniable, counsel multiplied proceedings through continued pursuit of frivolous positions and through obstructionist discovery conduct that has forced Yeezy to expend substantial resources to defend against allegations that never should have been litigated in this forum.

The Court need not tolerate this kind of litigation. Where, as here, the record shows a lawsuit prosecuted recklessly, for improper purposes, and in a manner tantamount to bad faith—amplified by tactics that unreasonably prolong the case and impede discovery—fee-based sanctions are warranted to compensate Yeezy for the needless expense imposed and to deter repetition of the same conduct in this Court.

Yeezy respectfully requests the Court grant this motion and provide it an opportunity to substantiate its fees pursuant to a subsequent fee and costs motion.

## II. LEGAL STANDARD

### A. Sanctions Pursuant to the Court's Inherent Authority

Federal courts possess inherent authority to sanction parties and counsel for a broad range of litigation abuses. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43.

A court's inherent power to impose sanctions is not displaced by other sanctions statutes and rules. *Chambers*, 501 U.S. at 46. "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49; *see Id.* at 50 ("But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."). This includes statutes like 28 U.S.C. § 1927 and procedural rules like Rule 11 of the Federal Rules of Civil Procedure. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("the district court may, in its informed discretion, rely on inherent power rather than the federal rules or § 1927."); *see Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 502 (7th Cir. 2009) ("But it is established that Rule 11 has not robbed the district courts of their inherent power to impose sanctions.").

Under its inherent authority, "a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). This includes not only bad faith but also "conduct tantamount to bad faith." *Id.* at 994. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper

purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 647 (2015) ("district courts have the authority and responsibility to ensure frivolous cases are dissuaded. If frivolous cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits."). "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

A court may infer bad faith from a party's actions plus the surrounding circumstances. *Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir. 2011); *see Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 106 (E.D. Cal. 2010) ("A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court.").

A court may also rely on a combination of different factors when determining bad faith for purposes of imposing sanctions even where no single factor, considered alone, would justify such a finding. *Salstrom v. Citicorp Credit Servs., Inc.*, 74 F.3d 183, 185 (9th Cir. 1996).

"Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980). Courts may consider the totality of the circumstances in determining bad faith. *Rodriguez v. United States*, 542 F.3d 704, 712 (9th Cir. 2008) ("We have previously approved of district courts considering the 'totality of the circumstances,' including conduct '*prelitigation* and during trial,' when making bad faith determinations.") (emphasis in original); *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 550 (9th Cir. 1992) ("It is not clear that the phrase 'actions that led

to the lawsuit' refers to conduct constituting the cause of action; it may refer instead to bad faith conduct in filing a frivolous or vexatious lawsuit.")

### B. Sanctions Pursuant to 28 U.S.C. § 1927 ("Section 1927")

Section 1927 provides that "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. While a court's inherent authority reaches conduct both before and after the filing of a complaint, Section 1927 focuses on the perpetuation of claims and arguments thereafter. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Another difference is that "recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

"[S]ection 1927 sanctions must be supported by a finding of subjective bad faith … [which] is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (citation omitted). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *Id.* "In the instant context, recklessness might be defined as a departure from ordinary standards of care that disregards a known or obvious risk of material misrepresentation." *In re Girardi,* 611 F.3d 1027, 1038 n. 4 (9th Cir. 2010). "A filing is frivolous if it is *both* baseless *and* made without a reasonable and competent inquiry." *Pratt v. California*, 11 F. App'x 833, 835 (9th Cir. 2001) (emphasis in original).

Sanctions may be withheld until the end of a trial, such as when "liability under proper sanctioning authority will not be immediately apparent or may not be precisely

and accurately discernible until a later time." *Salstrom v. Citicorp Credit Servs., Inc.*, 74 F.3d 183, 185 (9th Cir. 1996). "Such is necessarily the case where, as here, the sanctions are based upon the cumulative effect of the attorneys' conduct." *Id.*

### III. ARGUMENT

#### A. Plaintiffs are Liable for Sanctions for Recklessly Pursuing Frivolous Claims Tantamount to Bad Faith

Yeezy seeks sanctions against Plaintiffs under the Court's inherent authority for recklessly, if not maliciously, commencing this action and continuing to prosecute it up to the present even though it was clear at all points in time that their claims were frivolous. Plaintiffs have acted in bad faith or, at a minimum, have engaged in conduct that is tantamount to bad faith. The record shows their claims are not only frivolous but also appear to have been done for improper purposes and intended to harass.

Yeezy seeks its attorneys' fees incurred in defending this meritless action. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) ("Based on the circumstances of this case, we find that the District Court acted within its discretion in assessing as a sanction for Chambers' bad-faith conduct the entire amount of NASCO's attorney's fees.").

As detailed in Yeezy's motion for summary judgment, the claims made by Plaintiffs in this lawsuit—which are each central to their causes of action—are baseless. *See* ECF 58-1. The record shows Plaintiffs were reckless in pursuing these frivolous allegations which they could not possibly have believed to be true.

Plaintiffs allege they were employees of Yeezy. *See, e.g.,* ECF 19 (Plaintiffs' First Amended Complaint, "FAC"), ¶¶ 299 ("Defendants employed all Plaintiffs, minor and adult – R.M., M.A., D.P., K.S., DaCosta, Mofokeng, Jackson-Lea, and Olatunji"), 303 ("At all relevant times, Defendants employed Plaintiffs."). They later affirmed this claim in declarations submitted to the Court. ECF 37. After that, they further affirmed this position by purporting to deny requests for admission which

requested that they admit they were not employees of Yeezy. ECF 58-10 at 9 (Plaintiff Shemar DaCosta Response to RFA No. 22); ECF 58-11 at 9 (Plaintiff Miles Jackson- Lea Response to RFA No. 22); ECF 58-12 at 9 (Plaintiff Olakunle Olatunji Response to RFA No. 22); ECF 58-13 at 9 (Plaintiff R.M. Response to RFA No. 23); ECF 58-14 at 9 (Plaintiff M.A. Response to RFA No. 23); ECF 58-15 at 9 (Plaintiff D.P. Response to RFA No. 23); ECF 58-16 at 9 (Plaintiff K.S. Response to RFA No. 22); ECF 58-17 at 9 & ECF 58-18 at 10 (RFA No. 22 to Plaintiff Mofokeng and purported response in apparently miscaptioned document).

However, the underlying circumstances demonstrate Plaintiffs knew this claim was impossible, or at least that pursuing it would be reckless. They admitted to being co-owners of a separate business entity called YZYVSN. ECF 58-10 at 5 (Plaintiff Shemar DaCosta Response to RFA No. 1); ECF 58-11 at 5 (Plaintiff Miles Jackson-Lea Response to RFA No. 1); ECF 58-12 at 5 (Plaintiff Olakunle Olatunji Response to RFA No. 1); ECF 58-13 at 5 (Plaintiff R.M. Response to RFA No. 1 [admits ownership through his legal guardian]); ECF 58-14 at 5 (Plaintiff M.A. Response to RFA No. 1); ECF 58-15 at 5 (Plaintiff D.P. Response to RFA No. 1); ECF 58-16 at 5 (Plaintiff K.S. Response to RFA No. 1); ECF 58-17 at 5 & ECF 58-18 at 8 (RFA No. 1 to Plaintiff Mofokeng and purported response in apparently miscaptioned document); *see* ECF 58-31 (YZYVSN Organization Roster). This is even evidenced by a co-ownership agreement they signed. ECF 58-28 (DaCosta v Yeezy_000008-10 [YZYVSN Co-Ownership Agreement]); *see* ECF Nos. 58-10 through 58-18 (Plaintiffs each admitting the co-ownership agreement was signed, RFA No. 4).

Even though they are the most basic documents exchanged at the beginning of, and throughout, any employment relationship, Plaintiffs admit to having never received any wage statements from Yeezy and having never exchanged tax forms with the company. ECF 58-10 at 11 (Plaintiff Shemar DaCosta Response to RFA No. 33-35); Exhibit 4 at 12 (Plaintiff Miles Jackson-Lea Response to RFA No. 33-

11

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SANCTIONS

35); Exhibit 5 at 12 (Plaintiff Olakunle Olatunji Response to RFA No. 33-35); Exhibit 6 at 12 (Plaintiff R.M. Response to RFA No. 36-38); Exhibit 7 at 12 (Plaintiff M.A. Response to RFA No. 36-38); Exhibit 8 at 11-12 (Plaintiff D.P. Response to RFA No. 36-38); Exhibit 9 at 12 (Plaintiff K.S. Response to RFA No. 33-35); ECF 58-17 at 12 & ECF 58-18 at 11 (RFA Nos. 33-35 to Plaintiff Mofokeng and purported response in apparently miscaptioned document).

Evidence presented by Yeezy establishes Plaintiffs were never employed by the company. ECF 58-2, ¶¶ 24-27; ECF 58-3, ¶ 3. Not one of the Plaintiffs was ever interviewed, onboarded, granted access to company systems, provided with a company email address, issued a company mobile telephone, included in weekly departmental staff calls in person or via Zoom, assigned a manager or supervisor, declared in any company tax statements, listed in any employee directories or awarded or granted any royalties, credit or other acknowledgment for their contribution to any Yeezy LLC work product. ECF 58-2, ¶ 24. Yeezy's then Chief of Staff has confirmed that, none of the Plaintiffs were ever paid by Yeezy, nor did they receive "offer of employment" letters. ECF 58-2, ¶ 25. None were added to the payroll system. *Id.* Yeezy has no timesheets for any of the Plaintiffs and none of the Plaintiffs are in Yeezy's timekeeping system. *Id.* Their names do not appear on any health insurance systems. *Id.* They do not have personnel files. *Id.* No payroll records, tax documentation or benefit statements of any kind exist for any of them. *Id.*

As a part of their employment narrative, Plaintiffs claim that Yeezy acquired the YZYVSN entity. While their complaint and subsequent declarations attempt to vaguely aver this aspect—due to their knowledge that it was not true—Plaintiffs flatly purported to deny requests for admission that plainly asked that they admit that Yeezy never owned the YZYVSN business entity. *See* FAC, ¶¶ 37, *et seq.*; ECF 37 (Plaintiffs' declarations); ECF 58-10 at 8 (Plaintiff Shemar DaCosta Response to RFA No. 19); ECF 58-11 at 9 (Plaintiff Miles Jackson-Lea Response to RFA No.

19); ECF 58-12 at 9 (Plaintiff Olakunle Olatunji Response to RFA No. 19); ECF 58-13 at 8-9 (Plaintiff R.M. Response to RFA No. 20); ECF 58-14 at 8-9 (Plaintiff M.A. Response to RFA No. 20); ECF 58-15 at 8 (Plaintiff D.P. Response to RFA No. 20); ECF 58-16 at 9 (Plaintiff K.S. Response to RFA No. 19); ECF 58-17 at 9 & ECF 58-18 at 9 (RFA No. 19 to Plaintiff Mofokeng and purported response in apparently miscaptioned document).

However, there is literally no document, produced by either side in this action, to support Plaintiffs' claim that Yeezy acquired the YZYVSN entity. In fact, the acquisition agreement at issue—which was never signed by Yeezy and therefore never given effect—clearly states that it would have been an intellectual property acquisition and not a corporate takeover. ECF 58-28 at 7-9 ("Asset Purchase Agreement"). Plaintiffs' production and authentication of the document shows they were aware of its contents, yet proceeded to assert the frivolous corporate takeover narrative anyway. *See* ECF 58-10 at 7 (Plaintiff Shemar DaCosta Response to RFA No. 13); ECF 58-11 at 7 (Plaintiff Miles Jackson-Lea Response to RFA No. 13); ECF 58-12 at 7 (Plaintiff Olakunle Olatunji Response to RFA No. 13); ECF 58-13 at 7-8 (Plaintiff R.M. Response to RFA No. 14); ECF 58-14 at 7-8 (Plaintiff M.A. Response to RFA No. 14); ECF 58-15 at 7 (Plaintiff D.P. Response to RFA No. 14); ECF 58-16 at 7 (Plaintiff K.S. Response to RFA No. 13); ECF 58-17 at 7 & ECF 58-18 at 9 (RFA No. 13 to Plaintiff Mofokeng and purported response in apparently miscaptioned document).

The central conduit through which Plaintiffs purport to tie Yeezy into their causes of action, particularly the FEHA harassment and discrimination claims, is the idea that Yeezy had control over Plaintiffs' work environment, *i.e.*, a Discord server where YZYVSN communications apparently took place. See FAC, ¶¶ 63-65, 111-112, 115, 117, 131-132. This claim is frivolous given that Yeezy had nothing to do with the YZYVSN Discord Channel. ECF 58-2, ¶¶ 18-20. In fact, Plaintiffs themselves admitted that Yeezy LLC did not create the Discord channel in which the

YZYVSN App was developed and that at the time the YZYVSN Discord Channel was created, none of the moderators were employees of Yeezy LLC.  ECF 58-10 at 12-13 (Plaintiff Shemar DaCosta Response to RFA No. 42); ECF 58-11 at 13-14 (Plaintiff Miles Jackson-Lea Response to RFA No. 42); ECF 58-12 at 13-14 (Plaintiff Olakunle Olatunji Response to RFA No. 42); ECF 58-13 at 13 (Plaintiff R.M. Response to RFA No. 44); ECF 58-14 at 13 (Plaintiff M.A. Response to RFA No. 44); ECF 58-15 at 13 (Plaintiff D.P. Response to RFA No. 44); ECF 58-16 at 13-14 (Plaintiff K.S. Response to RFA No. 42); ECF 58-17 at 13-14 & ECF 58-18 at 12 (RFA No. 44 to Plaintiff Mofokeng and purported response in apparently miscaptioned document).

  The frivolous claims by Plaintiffs, specifically those who are located overseas, that they were subjected to forced labor and cruel, inhuman, or degrading treatment—which international law categorizes on the spectrum of torture—under the Alien Tort Statute were reckless.  *See* FAC, ¶¶ 279, *et seq.*  These are causes of action that are typically brought by victims of sweatshops and political dissidents who live under oppressive regimes.  The claims by the overseas Plaintiffs are impossible given that all of the apparently forced labor and inhuman treatment happened, according to Plaintiffs, over the internet and not in person.  *See* FAC, ¶¶ 110, *et seq.*  As discussed above, they admit to having worked via a Discord server.  The overseas Plaintiffs were also located on different continents.  *See* FAC, ¶¶ 166, 182, 192, 205, 225, 255; ECF 37 at 20 (Jackson-Lea Dec., ¶ 1), 28 (K.S. Dec., ¶ 1), 36 (M.A. Dec., ¶ 1), 43 (Mofokeng Dec., ¶ 1), 50 (Olatunji Dec., ¶ 1), 57 (R.M. Dec., ¶ 2).  The frivolity of this is further demonstrated by those overseas minor Plaintiffs whose allegations include that they signed volunteer agreements.  FAC, ¶¶ 53, 215, 231, 273.

  Separately, the most slanderous and damaging allegation leveled by Plaintiffs is that Ye's wife, Bianca Censori, sent "Yeezy Porn" to a YZYVSN worker and caused minors to be exposed to pornography.  FAC, ¶¶ 133-136.  This claim is

totally frivolous. There was never any "Yeezy Porn" that was ever produced and Ms. Censori absolutely *never* sent pornography to a minor or caused a minor to be exposed to pornography. ECF 58-2, ¶¶ 30-32; ECF 58-3, ¶¶ 7-8. Plaintiffs admit they have never even communicated with Ms. Censori. ECF 58-10 at 12 (Plaintiff Shemar DaCosta Response to RFA No. 40); ECF 58-11 at 13 (Plaintiff Miles Jackson-Lea Response to RFA No. 40); ECF 58-12 at 13 (Plaintiff Olakunle Olatunji Response to RFA No. 40); ECF 58-13 at 13 (Plaintiff R.M. Response to RFA No. 42); ECF 58-14 at 13 (Plaintiff M.A. Response to RFA No. 42); ECF 58-15 at 13 (Plaintiff D.P. Response to RFA No. 42); ECF 58-16 at 13 (Plaintiff K.S. Response to RFA No. 40); ECF 58-17 at 13 & ECF 58-18 at 11 (RFA No. 40 to Plaintiff Mofokeng and purported response in apparently miscaptioned document).

While some of the other frivolous claims made by Plaintiffs in this action may not necessarily be as automatically damaging apart from the attorney's fees incurred to defend them (*e.g.*, the employment claim), this specific claim was a direct attack on Ms. Censori's reputation and character. At the time the complaint was initially filed, numerous news articles ran headlines claiming she had sent porn to minors, all based on Plaintiffs' false allegations. If Plaintiffs had chosen to make this claim publicly, outside of a legal filing, it would have been actionable defamation. Yeezy requests the Court take special consideration of this frivolous claim.

Taking all of this together, the Court can infer from the above circumstances and varying factors that Plaintiffs have recklessly pursued a frivolous lawsuit to such a degree that is tantamount to bad faith. *See Fink, supra,* 239 F.3d at 994; *Miller, supra,* 661 F.3d at 1029; *Salstrom, supra,* 74 F.3d at 185; *Roadway Exp., Inc., supra,* 447 U.S. at 766.

Yeezy requests further opportunity after its motion for summary judgment to brief the remaining frivolous claims pursued by Plaintiffs—including that Yeezy intended to deceive Plaintiffs and promised them wages—as Yeezy anticipates that the resolution of that motion will definitively show that Plaintiffs never had evidence

1  to substantiate those claims. They even refused to provide interrogatory responses
2  that would have revealed this. *See* ECF Nos. 58-4, ¶ 4, 58-19, 58-20, 58-21, 58-22,
3  58-23, 58-24, 58-25, 58-26.

**B.  Sanctions Should Be Imposed Against Plaintiffs' Counsel for Recklessly Pursuing This Lawsuit Without Basic Investigation of the Facts or the Law**

Yeezy requests sanctions in the form of attorney's fees against Plaintiffs' Counsel pursuant to the Court's inherent authority and Section 1927 for recklessly pursuing Plaintiffs' frivolous claims in bad faith and by way of conduct tantamount to bad faith.

A cursory investigation would have revealed Plaintiffs' claims to be unsubstantiated. Plaintiffs' Counsel had a duty to investigate the claims of their clients before the filing of this lawsuit and subsequently thereafter, such as when Plaintiffs filed declarations in seeking a default, when they prepared responses to requests for admission, and presently in the preparation of their opposition to Yeezy's motion for summary judgment. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1220 (9th Cir. 2010) (upholding sanctions against attorney under the court's inherent authority and Section 1927 for "knowingly and recklessly pursuing a frivolous copyright infringement claim and litigating that claim in bad faith" where attorney failed to perform an investigation of the facts being asserted); *Ent. by J & J, Inc. v. Lee*, 126 F. App'x 797, 798 (9th Cir. 2005) ("The district court did not abuse its discretion in awarding sanctions in this case. It specifically found that Auerbach acted recklessly by not fully investigating her claim, especially after information discrediting her primary witness was brought to light. Furthermore, the district court determined that Auerbach's true motive was to exact a nuisance settlement from Lee, evidenced by Auerbach's statements about possessing incriminating photographs that later 'disappeared' from the file.").

However, it is clear under the circumstances that they did not do so or, worse,

knew the claims were without merit.  For example, even before filing this lawsuit, Plaintiffs' Counsel could have simply made a request to Yeezy for Plaintiffs' personnel files pursuant to California Labor Code section 1198.5.  *See* Cal. Lab. Code § 1198.5.  This is a standard practice by employment attorneys and doing so would have revealed that no such personnel files existed because Plaintiffs were never employed by Yeezy.  *See* ECF 58-2, ¶¶ 24-27.  As discussed above, Plaintiffs possess none of the standard documents that a person would have to evidence their employment at a company—such as tax documents, wage statements, and offer letters.  This fact should have resulted in a further inquiry by Plaintiffs' Counsel to determine whether their clients actually worked for Yeezy.

Worse, documents produced by Plaintiffs' Counsel show that the real underlying dispute was not between Yeezy and Plaintiffs in their personal capacity but, rather, in their capacity as co-owners of YZYVSN, which also operated under the name Valgros.  This is evidenced by the YZYVSN co-ownership agreement and the proposed asset purchase agreement with Yeezy.  ECF 58-28 at 4-9.  These show that the context of the interactions between the YZYVSN members and the Yeezy employees were that of two entities engaged in a potential intellectual property acquisition deal, and not as employers and employees.  Despite this, Plaintiffs' Counsel drafted, filed, and has continued to pursue a lawsuit based on the idea that Plaintiffs were employees of Yeezy.

Taking these circumstances together, the lack of employment documents and the contradicting documents in Plaintiffs' possession, Plaintiffs' Counsel was reckless in commencing and litigating this lawsuit that is centrally focused around the idea that Plaintiffs worked for Yeezy when they never did.  Yeezy requests further opportunity after its motion for summary judgment to brief the remaining frivolous claims pursued by Plaintiffs as Yeezy anticipates that the resolution of that motion will definitively show that there was never evidence to substantiate those claims.

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SANCTIONS

There are also numerous legal theories that minimal research would have revealed were baseless, including that the non-resident Plaintiffs are precluded from most of the causes of action—including the ATS claims, the FLSA claims, and the FEHA claims—due to extraterritorial exclusions, that the CIDT claim requires state action, and that minors cannot pursue age discrimination claims. *See* ECF 58-1 at 20-23, 25-26. These issues were even revealed during meet and confer and Plaintiffs' Counsel never withdrew the claims before Yeezy filed its summary judgment motion despite claiming they would look into it. Miller Dec., ¶ 2.

There are also immaterial claims that further demonstrate bad faith intent. For example, the complaint includes allegations implying that Defendant Milo Yiannopoulos is an advocate for pedophilia. FAC, ¶ 31. This does not relate to any of the Plaintiffs and could not possibly support any of the causes of action, yet Plaintiffs' Counsel included it in the pleadings anyway. It is notable that the pleading includes no mention of the widely circulated statements issued by Mr. Yiannopoulos in 2017 explaining how this characterization is inaccurate.[1] Moreover, the pleading also extensively details how Yeezy has apparently violated child labor laws, despite also admitting that this could not possibly support a civil cause of action.

Plaintiffs' Counsel's refusal to provide basic discovery to Yeezy further demonstrates that the litigation of this matter was not only reckless but designed to prevent Yeezy's resolution of this matter. To date, Plaintiffs' Counsel has refused to provide Plaintiffs' responses to interrogatories and requests for production that were timely served. Miller Dec., ¶ 4. The only documents Yeezy has from Plaintiffs are those they have chosen to unilaterally disclose. *Id.* They also preemptively cancelled the depositions of the Plaintiffs. *Id.* The only responses provided were for

---

[1] Milo Yiannopoulos: "I'm Horrified by Pedophilia," *Wash. Post* (Feb. 21, 2017) (video) (https://www.washingtonpost.com/video/national/milo-yiannopoulos-im-horrified-by-pedophilia/2017/02/21/40f7573e-f874-11e6-aa1e-5f735ee31334_video.html).

the requests for admission, likely due to their self-executing dispositive nature, which Plaintiffs' Counsel failed to provide prior to the deadline. *Id.* As a result of that failure, Plaintiffs' Counsel has taken the position that their late email serving the responses was actually sent prior to the deadline even though that is contradicted by the timestamp on the email. Miller Dec., ¶ 6. In what is likely an attempt to perpetuate this baseless narrative, Plaintiffs' Counsel has recently accused Yeezy's counsel of serving their portion of a joint stipulation after a deadline—even though the accusatory email itself from Plaintiffs' Counsel includes a timestamp showing they received the email from Yeezy's counsel prior to the applicable deadline. *Id.*, ¶ 7, Ex. 3.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion and award sanctions in an amount to be proven by a subsequent fee motion.

Dated:  March 6, 2026                    **MARTORELL LAW APC**

                                         /s/ *Evan Miller*
                                         Eduardo Martorell
                                         Christopher A. Rosario
                                         Evan Miller

                                         *Attorneys for Defendant,*
                                         *Yeezy LLC*