**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Christopher Rosario, State Bar No. 326436
CRosario@Martorell-Law.com
Evan Miller, State Bar No. 336473
EMiller@Martorell-Law.com
Playa District
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Telephone: (323) 840-1200
Facsimile: (323) 840-1300

Attorneys for Defendant,
Yeezy LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEMAR DACOSTA, an individual; PHOLOSO MOFOKENG, an individual, MILES JACKSON-LEA, an individual, OLAKUNLE OLATUNJI, an individual, R.M., a minor child, M.A., a minor child, D.P., a minor child, and K.S., a minor child, each through their parents as Court appointed guardians ad litem, <br><br> Plaintiff, <br><br> vs. <br><br> YEEZY LLC, a limited liability corporation; YE FKA KANYE WEST, an individual; MILO YIANNOPOULOS, an individual, <br><br> Defendants. | Case No.: 2:24-cv-05547-MWC-E <br><br> The Hon. Michelle Williams Court <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date:　　April 3, 2026 <br> Time:　　1:30 p.m. <br> Courtroom: 6A <br><br> Action Filed:　　June 29, 2024 <br> Fact Disc. Cutoff:　January 9, 2026 <br> Trial:　　July 6, 2026 |

MARTORELL LAW APC
Litigation & Trial Counsel

---

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................5

**I.    INTRODUCTION** ................................................................................8

**II.    STATEMENT OF FACTS** ..................................................................11

    **A.    This Case Involves a Potential IP Acquisition Deal That Did Not End Up Materializing**.................................................................................11

    **B.    Yeezy and YZYVSN were Separate Entities**................................12

    **C.    Yeezy Was Not Involved with YZYVSN's Discord Channel**........13

    **D.    Yeezy Separately Contracted Individually with Certain Developers for the Final In-House Yeezy App** ..............................................................13

    **E.    None of the Plaintiffs Were Employees of Yeezy** .........................14

    **F.    There Was No Yeezy Porn** ..............................................................15

    **G.    The Overseas Plaintiffs Resided Outside of the United States and DaCosta Was in New York**..........................................................................15

    **H.    Plaintiffs Did Not Pursue Any Legal Remedies Prior to Filing This Action**..........................................................................................................15

**III.    LEGAL STANDARD**.........................................................................15

**IV.    ARGUMENT** .....................................................................................16

    **A.    The Court May Grant Summary Judgment Based on Plaintiffs' Untimely Responses to Requests for Admission**........................................16

    **B.    Yeezy is Entitled to Judgment on Overseas Plaintiffs' Alien Tort Statute Claims**............................................................................................20

        **1.    Plaintiff K.S. cannot pursue ATS claims because he is a U.S. citizen living abroad and therefore not an "alien" within the meaning of the statute**........................20

        **2.    Overseas Plaintiffs (Mofokeng, Jackson-Lea, Olatunji, R.M., M.A.) cannot pursue ATS claims**

MARTORELL LAW APC

Litigation & Trial Counsel

because the alleged injuries do not touch and concern the U.S. ...................................................20

3. There Was No "Forced" Labor ...............................................22

4. Plaintiffs Cannot Pursue a CIDT claim Because That would Require State Action under International Law ...................................................22

5. Plaintiffs' Alleged Harm Does Not Constitute Cruel, Inhuman, Or Degrading Treatment Under International Law ...................................................23

C. Yeezy is Entitled to Judgment on Plaintiffs' Fair Labor Standards Act (FLSA) Claims ...................................................23

1. Overseas Plaintiffs Cannot Pursue FLSA Claims Because the Statute Does Not Apply Outside the United States...................................................23

2. Plaintiffs Cannot Pursue FLSA Claims Against Yeezy LLC Because They Were Never Employees of The Company...................................................23

3. Plaintiffs Cannot Pursue FLSA Minimum Wage Claims Because they Cannot Show they Worked Compensable Hours for Defendant...................................................24

4. Plaintiffs Cannot Pursue FLSA Overtime Pay Claims Because No Evidence Exists that Plaintiffs Performed Overtime Work...................................................25

D. Yeezy is Entitled to Judgment on Plaintiffs' Fair Employment and Housing Act (FEHA) Claims...................................................25

1. Nonresident Plaintiffs (DaCosta, Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., K.S.) Cannot

MARTORELL LAW APC

Litigation & Trial Counsel

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

Pursue FEHA Claims Because the Alleged Work and Injuries Occurred Outside of California ......................25

2.    Plaintiffs Cannot Pursue FEHA Claims Against Yeezy LLC Because they were Never Employees of the Company ........................................................25

3.    Plaintiffs Cannot Pursue Age-Related Harassment Claims Because they are All Less than 40-Years-Old........................................................26

4.    Plaintiffs Cannot Pursue Sex-Related Harassment Claims........................................................26

5.    The Harassment Alleged by Plaintiffs Cannot be Imputed to Yeezy LLC ...........................................27

E.    Yeezy is Entitled to Judgment on Plaintiffs' Fraud Claims .........28

F.    Yeezy is Entitled to Judgment on Plaintiffs' Quantum Meruit Claim 31

V.    CONCLUSION ........................................................32

MARTORELL LAW APC
Litigation & Trial Counsel

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

Cases

*999 v. C.I.T. Corp.*,
    776 F.2d 866 (9th Cir.1985) .............................................................................16, 19

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
    , 600 U.S. 412, 419 (2023)........................................................................................20

*Al Shimari v. CACI Premier Tech., Inc.*,
    263 F. Supp. 3d 595 (E.D. Va. 2017) .....................................................................22

*Arshakyan v. X17, Inc.*,
    No. CV1604305TJHRAOX, 2019 WL 10097455 (C.D. Cal. June 21, 2019) ........25

*Bradley v. Dep't of Corr. & Rehab.*,
    158 Cal. App. 4th 1612 (2008) ................................................................................27

*Campbell v. Arco Marine, Inc.*,
    42 Cal. App. 4th 1850 (1996) ..................................................................................25

*Celotex Corp v. Catrett*,
    477 U.S. 317 (1986).................................................................................................15

*Cereghino v. Boeing Co.*,
    873 F. Supp. 398 (D. Or. 1994) .........................................................................17, 19

*Cnty. of Santa Clara v. Superior Ct.*,
    14 Cal. 5th 1034 (2023) ...........................................................................................31

*Cook v. Allstate Ins. Co.*,
    337 F. Supp. 2d 1206 (C.D. Cal. 2004) ...................................................................19

*Dore v. Arnold Worldwide, Inc.*,
    39 Cal. 4th 384 (2006) .............................................................................................31

*Ducey v. Argo Sales Co.*,
    25 Cal. 3d 707 (1979) ..............................................................................................29

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997) .............................................................................................28

*First nat. Bank of Ariz. V. Cities Service Co.*,
    391 U.S. 253 (1968).................................................................................................16

*FTC v. Medicor, LLC*,
    217 F.Supp.2d 1048 (C.D.Cal.2002) .......................................................................16

*GTE Directories Corp. v. McCartney*,
    11 F. App'x 735 (9th Cir. 2001) .........................................................................16, 19

*Herman v. Blackman*,
    142 Cal. App. 2d 613 (1956) ...................................................................................31

*Hilao v. Est. of Marcos*,
    103 F.3d 789 (9th Cir.) ............................................................................................22

*Hoffman v. 162 N. Wolfe LLC*,
    228 Cal. App. 4th 1178 (2014) ................................................................................31

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC

Litigation & Trial Counsel

*Hollis v. R&R Restaurants, Inc*,
  159 F.4th 677 (9th Cir. 2025) ..................................................................................23

*Jackson v. Bank of Haw.*,
  902 F.2 1385 (9th Cir. 1990) ...................................................................................15

*Jesner v. Arab Bank, PLC*,
  584 U.S. 241 (2018) .................................................................................................20

*Jobe v. Harris*,
  No. 5:22-CV-02276-SPG-MAR, 2025 WL 1393717 (C.D. Cal. Apr. 11, 2025) ...19

*Joga v. Jogadinnemeeda*,
  No. 18CV07078DDPJPRX, 2019 WL 3205795 (C.D. Cal. July 16, 2019)...........20

*Kadic v. Karadzic*,
  70 F.3d 232 (2d Cir. 1995)......................................................................................22

*Kaldawi v. State of Kuwait*,
  No. LACV1407316JAKJPRX, 2017 WL 6017293 (C.D. Cal. Mar. 17, 2017)......20

*Kruitbosch v. Bakersfield Recovery Servs., Inc.*,
  114 Cal. App. 5th 200 (2025) ..................................................................................27

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
  12 Cal. 4th 291 (1995) ........................................................................................29, 30

*Lyle v. Warner Bros. Television*,
  *Prods.*, 38 Cal. 4th 264 (2006)..........................................................................26, 27

*Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................................................15

*Mujica v. Occidental Petroleum Corp.*,
  381 F. Supp. 2d 1164 (C.D. Cal. 2005) ..................................................................22

*Nestle USA, Inc. v. Doe*,
  593 U.S. 628 (2021).............................................................................................20, 21

*Payne v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
  128 Cal. App. 2d 295 (1954) ..................................................................................31

*Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*,
  52 F.4th 843 (9th Cir. 2022) ...................................................................................24

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*,
  55 Cal. 4th 1169 (2013) ..........................................................................................29

*RSB Vineyards, LLC v. Orsi*,
  15 Cal. App. 5th 1089 (2017) .................................................................................29

*S.K. Innovation, Inc. v. Finpol*,
  854 F. Supp. 2d 99 (D.D.C. 2012).........................................................................19

*Sexual Minorities Uganda v. Lively*,
  254 F. Supp. 3d 262 (D. Mass. 2017).....................................................................21

*Talley v. Cnty. of Fresno*,
  51 Cal. App. 5th 1060 (2020) .................................................................................26

*Tony & Susan Alamo Found. v. Sec'y of Lab.*,
  471 U.S. 290 (1985).................................................................................................24

MARTORELL LAW APC

Litigation & Trial Counsel

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

*Weil v. Walmart Inc.*,
  644 F. Supp. 3d 772 (D. Nev. 2022).........................................................17
*Wright v. Paul Revere Life Ins. Co.*,
  291 F. Supp. 2d 1104 (C.D. Cal. 2003) ....................................................17
*Yield Dynamics, Inc. v. TEA Sys. Corp.*,
  154 Cal. App. 4th 547 (2007) ..............................................................28, 29

**Statutes**

28 U.S.C. § 1350.................................................................................8, 20
29 U.S.C. § 213(f).......................................................................................23
Cal. Gov't Code § 12926(b) ........................................................................26

**Rules**

Fed. R. Civ. P. 1..........................................................................................15
Fed. R. Civ. P. 36(a) ...................................................................................16
Fed. R. Civ. P. 36(b) ...................................................................................16
Fed. R. Civ. P. 56(a) ...................................................................................15
Rule 36 ...................................................................................................17, 19

**Other Authorities**

CACI 3701, 3720 .........................................................................................29
CACI 3720 ..................................................................................................30

MARTORELL LAW APC

Litigation & Trial Counsel

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Yeezy LLC ("Defendant" or "Yeezy") respectfully submits this motion for summary judgment, or, in the alternative, partial summary judgment, as to all causes of action in the First Amended Complaint ("FAC") filed by plaintiffs Shemar Dacosta, Pholoso Mofokeng, Miles Jackson-Lea, Olakunle Olatunji, R.M., M.A., D.P., and K.S. (collectively, "Plaintiffs").[1]

## I.    INTRODUCTION

Plaintiffs' lawsuit is a work of fiction.  The hyperbolic allegations are false and appear to have been written entirely for consumption by tabloid newspapers and gossip columns.  This is a quintessential misuse of the court system.  Plaintiffs seem to believe they can file a frivolous action against a wealthy celebrity and his business to obtain a lucrative judgment.  Courts, however, require evidence and, here, there is no genuine dispute of material fact as to any of the Plaintiffs' causes of action. Yeezy is entitled to judgment as a matter of law.

Plaintiffs aver that they are former employees of Yeezy who were misled into working long hours on developing a phone application for the company.  They claim to be the victims of fraud, workplace harassment, discrimination, and a variety of other state and federal employment-based claims for alleged non-payment of wages, including quantum meruit.  The overseas plaintiffs who reside outside of the United States seek claims under the 1789 Alien Tort Statute (28 U.S.C. § 1350) for "forced labor" and "cruel, inhumane, and degrading treatment" ("CIDT")—international law categorizes CIDT as a lesser form of torture.  The claims are all meritless.

Plaintiffs were never employees of Yeezy.  They were never interviewed, hired, onboarded, supervised, provided a company email, or given access to company servers.  There are no offer letters, employment agreements, personnel files, tax documents, wage statements, or any other kind of document that could exist to show

---

[1] On October 29, 2024, the Court dismissed the individual defendants, Ye and Milo Yiannopoulos, due to Plaintiffs' failure to diligently prosecute their claims against them.  ECF 32.

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

they were employees of the company. No evidence exists because Plaintiffs were part of a completely separate entity, YZYVSN—a fan-made open-source code project—which independently began creation of a phone application following the publicly expressed desire of defendant Ye (formerly known as Kanye Omari West) to have an app for his music and his business, Yeezy LLC. While Plaintiffs had hoped this would get them noticed by Ye and Yeezy, they were ultimately engaged in a self-directed venture with no expectation of being compensated for their work.

YZYVSN was originally started by Massimo Venezia, a resident of Argentina, who later recruited other fans from around the world to work on the project, including Plaintiffs. About a month after it began operations, YZYVSN started to actively make efforts to reach out to Yeezy. Once YZYVSN's leadership made first contact, the two entities entered discussions for a potential intellectual property ("IP") acquisition agreement in which Yeezy would purchase the code being written by YZYVSN. Yeezy's plan was to use this code, and other code purchased from similar fan projects, to develop the final Yeezy application in-house. To do this, Yeezy separately contracted with some of the developers from the fan projects, including YZYVSN. However, none of the Plaintiffs were ever considered for this in-house work, particularly given that most of them are not even software developers, and four of them are minors—whom no serious business would try to hire. Yeezy was not even aware that minors were involved in the project until the acquisition discussions had already greatly progressed. After learning this, and solely as a precaution, Yeezy requested and received volunteer agreements signed by the minors' parents from YZYVSN's leadership.

The proposed IP acquisition deal was reduced into writing for a contemplated value of $120,000 from Yeezy to YZYVSN. Notably, YZYVSN identified itself in that proposed agreement as "Valgros," a corporation registered in Finland. However, as is forseeable in the business world, the deal fell through and no representative of Yeezy ever signed the agreement. Plaintiffs, who were dissatisfied with this result,

MARTORELL LAW APC
Litigation & Trial Counsel

9

thereafter concocted the story presented in their complaint.

Plaintiffs claim Yeezy acquired YZYVSN as an entity, resulting in them becoming full employees of the company. They point to the YZYVSN members who were separately contracted by Yeezy to develop the in-house application as "proof" that YZYVSN was some kind of subdivision of Yeezy. Plaintiffs allege the YZYVSN Discord communication channel was a non-physical online "workplace" at Yeezy—a concept that does not exist in the law—and that all of the inappropriate banter between the YZYVSN members on there, who were all teenage boys or in their early 20s, was actually workplace harassment and discrimination. This is all, of course, a gross distortion of the facts by Plaintiffs for purposes of this baseless lawsuit. The remaining factual allegations fall into this same paradigm. For example, the defamatory allegation that Ye's wife, Bianca Censori, directly exposed minor Plaintiffs to pornography is a total fabrication that Plaintiffs appear to have spun out of stories they read on the internet.

Given that Plaintiffs were never employees of Yeezy, all of their employment-based claims fail as a matter of law. Similarly, Plaintiffs cannot pursue the fraud and quantum meruit claims because those would ultimately be claims owned by or against YZYVSN, who is not a party to this action. There is also no proof of any fraudulent intent or that Plaintiffs ever had an expectation of compensation from Yeezy for their work.

The Alien Tort Statute ("ATS") causes of action fail because there is absolutely no evidence that the Plaintiffs pursuing them, who remotely performed their work overseas, were subjected to forced labor or any form of torture. Forced labor would require some kind of coercion, *i.e.*, threats of physical or psychological harm. Plaintiffs, however, could have turned off their computers at any time to avoid their "harm." The CIDT claims additionally fail because those require some form of state action by Yeezy, which Plaintiffs do not even allege, and could never be proven as Yeezy is not a foreign government or a contractor for one.

MARTORELL LAW APC

Litigation & Trial Counsel

The majority of Plaintiffs do not even have jurisdiction to pursue their claims. The ATS causes of action are precluded by the legal presumption against that law's extraterritorial application. It is undisputed that the overseas Plaintiffs worked in other countries and that YZYVSN was run by Massimo Venezia from Argentina. Thus, the conduct underlying Plaintiffs' purported harm did not touch and concern the United States. Yeezy's mere corporate presence and general corporate activities are insufficient to create jurisdiction where there otherwise would be none. Similarly, the California Fair Employment and Housing Act ("FEHA") claims are precluded by a legal presumption against that statute's extraterritorial application. Neither the overseas Plaintiffs nor plaintiff DaCosta, who lives in New York, can pursue them. The overseas Plaintiffs also cannot pursue claims under the federal Fair Labor Standards Act ("FLSA") because that statute specifically exempts any work performed outside the United States.

The case is meritless. Yeezy respectfully requests the Court grant summary judgment against all Plaintiffs on all causes of action.

## II.    STATEMENT OF FACTS

### A.    This Case Involves a Potential IP Acquisition Deal That Did Not End Up Materializing

Yeezy is a limited liability company registered in Delaware with its principal place of business in Los Angeles, California. UMF 1. Yeezy's sole managing member is Ye, who is one of the most highly acclaimed rappers of all time. UMF 2.

In March 2024, Ye was contemplating the launch of one or more music albums via his own streaming platform or mobile app. UMF 3. This led many of his fans to organically begin their own independent app development projects. *Id.* One of those projects was YZY VSN (VISION) ("YZYVSN"), which was started by Massimo Venezia, a resident of Argentina. UMF 4. In what would become known as the "YZYVSN App," YZYVSN desired "to create a platform that enables the whole community to access everything Ye and YZY in one place." UMF 5.

Many of the fan-made app projects began to solicit Yeezy. UMF 6. After obtaining the email of Yeezy employee Ben Priest through a mutual contact, Mr. Venezia first reached out to Yeezy on March 17, 2024, describing YZYVSN's progress and seeking to engage in further discussions. UMF 7. Thereafter, Mr. Priest put Mr. Venezia in contact with Yeezy's Chief Technical Officer, Johnathan Solorzano, who, over the following week, discussed the details of YZYVSN's development with Mr. Venezia with the goal of understanding YZYVSN's capabilities. UMF 8. Mr. Solorzano was clear in communications that he was only making a first assessment and, if that went well, he would work with Yeezy management on a potential contract to acquire YZYVSN's IP. UMF 9.

YZYVSN entered into discussions with Yeezy LLC in April 2024 for an agreement to sell the YZYVSN App to Yeezy LLC. UMF 10. On April 1, 2024, Mr. Venezia (also known by his nickname, "Venza") sent Mr. Solorzano YZYVSN's tech stack for further review. UMF 11. The terms proposed by YZYVSN for the sale of the YZYVSN App to Yeezy LLC were commemorated into a document titled the "Asset Purchase Agreement." UMF 12, 13. Mr. Venezia signed the Asset Purchase Agreement on behalf of YZYVSN. UMF 14. However, the acquisition was never ultimately completed. UMF 15. No person ever signed the Asset Purchase Agreement on behalf of Yeezy LLC. UMF 16. The YZYVSN App was never available for download on the Apple iOS App Store or the Google Android Play Store. UMF 17.

**B.      Yeezy and YZYVSN were Separate Entities**

During the early deal evaluation period, it was clear to the Yeezy employees involved that YZYVSN was operating as a business entity. UMF 24. YZYVSN had its own organizational structure with separate departments for management, marketing, development, design, and video and sound editing. UMF 25. YZYVSN had registered its trademarks in Argentina. UMF 26. YZYVSN had its own independent social media presence. UMF 27. As shown in documents produced by

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

Plaintiffs, YZYVSN had a code of conduct that team members were not to contact Yeezy employees without their consent. UMF 28. The leadership of YZYVSN communicated with Yeezy using designated email addresses for the project. UMF 29. When YZYVSN sent their tech stack to Yeezy on April 1, 2024, they noted that they would be using their newly acquired top-level domain email addresses (@yzy.vision). UMF 30.

Around April 5, 2024, YZYVSN formalized their ownership shares of the IP into a Co-Ownership Agreement. UMF 31, 32, 33, 34, 35. Plaintiffs were also co-owners of the YZYVSN entity itself. UMF 36. Formally, YZYVSN operated under the name Valgros—a company registered in Finland whose listed principal is a citizen of Argentina with residence in Vantaa, Finland. UMF 40, 41.

Documents produced by Plaintiffs further demonstrate YZYVSN's distinctness as an entity. In a March 30, 2024, message to Plaintiff DaCosta and another YZYVSN Member, Massimo Venezia reprimanded his subordinates for attempting to takeover the venture in meetings and clarified his role as the lead and manager of YZYVSN. UMF 124.

### C. Yeezy Was Not Involved with YZYVSN's Discord Channel

YZYVSN used Discord as one of its primary methods of communication. UMF 43. Yeezy was never involved in YZYVSN's Discord in any way. UMF 44, 45, 46, 47, 48, 49, 50. The Discord channel predated YZYVSN's IP acquisition discussions with Yeezy. UMF 51. Plaintiffs admit that Yeezy did not create the Discord and that no Yeezy employees were moderators of it when it was created. UMF 52, 53. Indeed, no one from Yeezy was ever invited to or joined the Discord channel. UMF 45, 46.

### D. Yeezy Separately Contracted Individually with Certain Developers for the Final In-House Yeezy App

In terms of launching the final Yeezy App, the company had planned to acquire the IP of the two major fan-made apps, YZYVSN and YZY APP, and

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

combine them in-house to launch the final product. UMF 54. To accomplish this, they were going to separately contract with the most talented developers from the fan projects, with the idea that they may later become regular employees. UMF 55. In line with this, Mr. Venezia was brought on as a consultant at Yeezy for the purpose of conceptualizing and strategizing the creation of the final Yeezy App. UMF 56. Although he was given the title of "product lead," this extended only to his immediate duties regarding the final application—Mr. Venezia never managed Yeezy staff and had no ability or authority to represent or make promises on behalf of Yeezy in any way, including promising wages, salaries, or payments of any kind of behalf of the company. UMF 57, 58, 59, 60, 61. Mr. Venezia's tenure at Yeezy only lasted a short time. UMF 62.

### E. None of the Plaintiffs Were Employees of Yeezy

None of the Plaintiffs in this action were ever interviewed, onboarded, granted access to Yeezy's systems, provided with a company email address, issued a company mobile telephone, included in weekly departmental staff calls in person or via Zoom, assigned a manager or supervisor, declared in any company tax statements, listed in any employee directories or awarded or granted any royalties, credit or other acknowledgment for their contribution to any Yeezy LLC work product. UMF 78, 79, 80, 81, 82, 83, 84, 85, 86, 87. No documents exist to suggest or sustain the contrary. UMF 88.

None of the Plaintiffs in this action were ever an employee of Yeezy, and none were ever paid by Yeezy, nor did they receive any offers of employment. UMF 89, 90, 91. None were added to the payroll system. UMF 92. Their names do not appear on any health insurance systems. UMF 93. They do not have personnel files. UMF 94. No payroll records, tax documentation or benefit statements of any kind exist for any of them. UMF 95, 96, 97. Yeezy has no timesheets for any of the Plaintiffs and none of the Plaintiffs are in Yeezy's timekeeping system. UMF 98, 99.

Plaintiffs even admit that they never received any wage statements from

MARTORELL LAW APC
Litigation & Trial Counsel

Yeezy.  UMF 100.  Further, they admit that they never provided tax forms to Yeezy or received any from the company.  UMF 101, 102.

Despite all of this, Plaintiff DaCosta has falsely represented himself as an employee or contractor of Yeezy on LinkedIn, including with a non-existent job title and fabricated dates of employment.  UMF 103.

### F.   There Was No Yeezy Porn

There has never been a "Yeezy Porn" product at Yeezy.  UMF 105.  No such content was ever created.  *Id.*  No "Yeezy Porn App" was ever made, contemplated, or planned.  UMF 106.  No Yeezy Porn was ever shown to any of the Plaintiffs by any Yeezy employees because it did not exist.  UMF 107.  Thus, the claim that Ye's wife Bianca Censori sent pornography to a YZYVSN worker for a "Yeezy Porn App" is entirely fabricated.  UMF 108.  Plaintiffs even admit that they have never directly communicated with Ms. Censori.  UMF 109.

### G.   The Overseas Plaintiffs Resided Outside of the United States and DaCosta Was in New York

Plaintiff Shemar DaCosta is a resident of the State of New York.  UMF 110. Plaintiff Mofokeng is a resident and citizen of South Africa.  UMF 111.  Plaintiff Jackson-Lea is a resident and citizen of England, UK.  UMF 112.  Plaintiff Olatunji is a citizen of Nigeria and resides in FCT Abuja, Nigeria.  UMF 113.  Plaintiff R.M. is a resident and citizen of England.  UMF 114.  Plaintiff M.A. a resident and citizen of Hungary.  UMF 115.  Plaintiff K.S. is a resident of the United Arab Emirates and a citizen of the United States.  UMF 116.

### H.   Plaintiffs Did Not Pursue Any Legal Remedies Prior to Filing This Action

Plaintiffs did not pursue any legal remedies relating to their allegations in the complaint in their jurisdictions prior to the filing of this action.  UMF 125.

## III.   LEGAL STANDARD

"Summary judgment procedure is properly regarded … as an integral part of the

MARTORELL LAW APC
Litigation & Trial Counsel

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the movant shows that summary judgment is appropriate, the burden shifts to the nonmoving party to establish genuine issues of material facts.  *Celotex*, 477 U.S. at 324; *Jackson v. Bank of Haw.*, 902 F.2 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts").  Where the record "as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First nat. Bank of Ariz. V. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

## IV.    ARGUMENT

### A.    The Court May Grant Summary Judgment Based on Plaintiffs' Untimely Responses to Requests for Admission

Summary judgment may be granted in favor of Yeezy as Plaintiff's did not timely respond to Yeezy's requests for admission and did not subsequently file a motion to withdraw the deemed admissions, which are self-executing.

"It is clear that a district court may grant summary judgment based on deemed admissions." *GTE Directories Corp. v. McCartney*, 11 F. App'x 735, 737 (9th Cir. 2001).  This includes instances in which responses to requests for admission are served outside of the 30-day deadline and no motion to withdraw is made:

> When a party seeks discovery pursuant to Rule 36(a), a "[f]ailure to timely respond to requests for admissions results in automatic admission of the matters requested." *FTC v. Medicor, LLC,* 217 F.Supp.2d 1048, 1053 (C.D.Cal.2002); Fed. R. Civ. P. 36(a). "No motion to establish the admissions is [necessary] because Federal Rule of Civil Procedure 36(a) is self executing." *Medicor, LLC,*

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC

Litigation & Trial Counsel

> 217 F.Supp.2d at 1053. Once admitted, the Court may, upon motion, permit withdrawal or amendment of the admission if doing so will serve to present the matter on the merits and will not prejudice the party seeking the admission. Fed. R. Civ. P. 36(b). However, the Ninth Circuit has warned district courts to be "cautious in exercising their discretion to permit withdrawal or amendment of an admission." *999 v. C.I.T. Corp.,* 776 F.2d 866, 869 (9th Cir.1985).
>
> In this case, [Plaintiff] did not timely respond to Defendant's properly served requests for admissions. In addition, [Plaintiff] never filed a properly noticed motion to withdraw the admissions. Accordingly, the admissions to which [Plaintiff] did not properly respond are deemed admitted.
>
> These admissions support Defendant's motion for summary judgment.

*Wright v. Paul Revere Life Ins. Co.*, 291 F. Supp. 2d 1104, 1111 (C.D. Cal. 2003). "[R]elying on deemed admissions to support a motion for summary judgment does not flout any rule and is commonplace in civil litigation." *Weil v. Walmart Inc.*, 644 F. Supp. 3d 772, 780 (D. Nev. 2022).

Here, the undisputed facts show that Yeezy served the requests on December 10, 2025. UMF 118. Plaintiffs did not respond until 31 days later on January 10, 2026. UMF 119. Even though responses were served shortly after midnight, the discovery rules are clear that these admissions are self-executing and it was incumbent upon Plaintiffs to move to withdraw them, which they never did. *See Wright*, 291 F. Supp. 2d at 1111. This is especially true for Plaintiff Pholoso Mofokeng who *never served any responses* to the requests for admission. UMF 120; *see Cereghino v. Boeing Co.*, 873 F. Supp. 398, 403 (D. Or. 1994) ("Rule 36 admissions, even those accruing upon a party's default in responding, may be sufficient independent grounds for summary judgment.")

As a result, the facts underlying the requests that Plaintiffs did not already admit are established for purposes of this motion, including: Yeezy LLC and YZYVSN are separate business entities. UMF 20. YEEZY LLC never owned the

MARTORELL LAW APC
Litigation & Trial Counsel

business entity YZYVSN.  UMF 21.  YZYVSN incorporated in Finland under the name "Valgros."  UMF 42.  The Co-Owners of YZYVSN agreed to appoint Massimo Venezia as the principal executive of YZYVSN.  UMF 37.  Massimo Venezia had the legal authority to act on behalf of YZYVSN.  UMF 38.  Plaintiffs never objected to Massimo Venezia's representations that he was the "CEO" of YZYVSN. UMF 39.

Plaintiffs were never employees of Yeezy LLC.  UMF 63.  Plaintiffs never directly provided services to Yeezy LLC in their personal capacities.  UMF 64. There are no written employment agreements that exist between Plaintiffs and Yeezy LLC.  UMF 67.  There are no documents evidencing an unwritten employment agreement between any of the Plaintiffs and Yeezy LLC.  UMF 68.  No representative of Yeezy LLC ever agreed to pay wages to any of the Plaintiffs for their work on the YZYVSN App.  UMF 69.  Any payments made by Yeezy LLC relating to the YZYVSN App were made to YZYVSN.  UMF 70.  Any payments made by Yeezy LLC relating to the YZYVSN App were made pursuant to an invoice sent to Yeezy LLC by YZYVSN.  UMF 71.  All communications between Plaintiffs and any representatives of Yeezy LLC relating to the YZYVSN App were in their capacities as employees or co-owners of YZYVSN.  UMF 72.

Plaintiffs' work on the YZYVSN App was in their capacity as co-owners of YZYVSN or, in the case of the minor Plaintiffs, as beneficiaries of co-owners.  UMF 73.  Plaintiffs were all employees of YZYVSN during the time of the events alleged in their complaint.  UMF 74.  All work performed by Plaintiffs R.M., M.A., and D.P. on the YZYVSN APP was in their capacities as employees of YZYVSN.  UMF 75. Plaintiffs signed agreements stating their work on the YZYVSN App was voluntary. UMF 76.  All work performed by Plaintiffs on the YZYVSN APP was voluntary. UMF 77.

The YZYVSN App was never finished.  UMF 18.  The YZYVSN APP was never delivered to Yeezy LLC.  UMF 19.  Plaintiffs are unaware of any statements

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

by any representatives of Yeezy LLC amounting to an intention to purchase the YZYVSN business entity.  UMF 22.  All communications that Plaintiffs observed from Yeezy LLC representatives relating to payments were related to the potential purchase of the YZYVSN App intellectual property by Yeezy LLC.  23

No representative of Yeezy LLC ever shared pornography with any of the Plaintiffs.  UMF 104.  Plaintiffs have never directly communicated with Milo Yiannopoulos.  UMF 65.  Plaintiffs have never directly communicated with Ye. UMF 66.

To the extent Plaintiffs attempt to qualify any admissions they did make, those conditions would be overridden.  *See, e.g.,* UMF 12.

Plaintiffs cannot, on opposition, rebut these admissions with conflicting evidence or properly request their withdrawal.  *GTE Directories Corp. v. McCartney*, 11 F. App'x 735, 737 (9th Cir. 2001) ("The question then becomes whether it is still appropriate to grant such a motion if the nonmoving party submits admissible evidence that contradicts the deemed admissions, yet fails to file a… motion [for relief]. We hold that it is."); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded."); *Cook v. Allstate Ins. Co.*, 337 F. Supp. 2d 1206, 1214 (C.D. Cal. 2004) (Rule 36 admissions trump conflicting evidence on summary judgment and a failure to challenge admissions until a responsive brief is due is too late); *Jobe v. Harris*, No. 5:22-CV-02276-SPG-MAR, 2025 WL 1393717, at *3 (C.D. Cal. Apr. 11, 2025).

The fact that these admissions are dispositive of Plaintiffs' case does not render them improperly obtained or ineffective on this motion.  *Cereghino v. Boeing Co.*, 873 F. Supp. 398, 403 (D. Or. 1994) ("As a preliminary matter, a request for admission under Rule 36, and a resultant admission, are not improper merely because they, as here, relate to an 'ultimate fact,' or prove dispositive of the entire case.")

As discussed below, these factual issues defeat each of Plaintiffs' causes of action.  Notwithstanding this self-executing rule, the undisputed facts show that

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

Yeezy is entitled to summary judgment even without these admissions.

## B. Yeezy is Entitled to Judgment on Overseas Plaintiffs' Alien Tort Statute Claims

Plaintiffs Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., and K.S. ("Overseas Plaintiffs") all assert two causes of action under the Alien Tort Statute ("ATS") for (1) Forced Labor and (2) Cruel, Inhuman, or Degrading Treatment ("CIDT"). Yeezy is entitled to judgment on these claims

### 1. Plaintiff K.S. cannot pursue ATS claims because he is a U.S. citizen living abroad and therefore not an "alien" within the meaning of the statute

A U.S. citizen cannot bring a claim under the ATS. *S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 109 (D.D.C. 2012) ("ATS does not confer jurisdiction over claims brought by non-aliens."); *Joga v. Jogadinnemeeda*, No. 18CV07078DDPJPRX, 2019 WL 3205795, at *3 (C.D. Cal. July 16, 2019) ("Plaintiff is a U.S. citizen, therefore, Plaintiff cannot assert a claim under Section 1350."); *Kaldawi v. State of Kuwait*, No. LACV1407316JAKJPRX, 2017 WL 6017293, at *12 (C.D. Cal. Mar. 17, 2017) ("the Alien Torts Claim Act ("ATCA"), 28 U.S.C. § 1350 … only provides a basis for *aliens*, i.e., those who are not U.S . citizens"). K.S. admits that he is a citizen of the United States and therefore judgment should be granted on his ATS claims. UMF 116.

### 2. Overseas Plaintiffs (Mofokeng, Jackson-Lea, Olatunji, R.M., M.A.) cannot pursue ATS claims because the alleged injuries do not touch and concern the U.S.

The ATS is a purely jurisdictional statute that provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. "The ATS is 'strictly jurisdictional' and does not by its own terms provide or delineate the definition of a cause of action for international-law violations." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 241 (2018). "ATS litigation

MARTORELL LAW APC

Litigation & Trial Counsel

implicates serious separation-of-powers and foreign-relations concerns[.]" *Id.* at 242.

Supreme Court jurisprudence holds that there is a legal presumption that statutes apply only domestically absent an affirmative indication that rebuts the presumption. *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 632-33 (2021). The Supreme Court has applied this presumption against extraterritoriality to the ATS. *Id.* Thus, "plaintiffs must establish that the conduct relevant to the statute's focus occurred in the United States." *Id.* at 633. This analysis "is designed to apply the presumption against extraterritoriality to claims that involve both domestic and foreign activity, separating the activity that matters from the activity that does not." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 419 (2023). "[I]f the relevant conduct occurred in another country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U. S. territory." *Id.* "Of course, if all the conduct regarding the violations took place outside the United States, then courts do not need to determine the statute's focus at all." *Id.* (cleaned up). Under this analysis, a domestic application of the ATS is not satisfied by a defendant's "mere corporate presence" and "general corporate activity is no better." *Nestle USA, Inc.*, 593 U.S. at 634.

Here, the focus of Overseas Plaintiffs' claims is that they were allegedly forced to work, including under apparent false promises. *See* FAC, ¶¶ 280, 290. The undisputed material facts show Plaintiffs' claims would require an impermissible extraterritorial application of the ATS: Each of the Overseas Plaintiffs is located in a country outside of the United States. UMF 111, 112, 113, 114, 115, 116. This work was performed entirely online and communications were done over a Discord channel. UMF 43, 117. The undisputed facts show that YZYVSN was run by Mr. Venezia who is located in Argentina. *See* UMF 4, 37, 39. YZYVSN also operated as a Finnish corporation. UMF 40, 41. Given that Yeezy was a separate and distinct entity from YZYVSN, it is clear that the focus of Plaintiffs' claims originates from

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

Argentina or Finland. *See* UMF 20-42 (separates entities). To the extent Yeezy was ever involved, it was, at best, minor electronic communications over the internet which are the kind of general corporate activity that is insufficient to displace the presumption against extraterritoriality. See *Sexual Minorities Uganda v. Lively*, 254 F. Supp. 3d 262, 270 (D. Mass. 2017) ("If emails … were enough to supply the 'force' sufficient to justify the exercise by American courts of jurisdiction over wrongs committed in foreign countries, the presumption against extraterritoriality described in Kiobel would be a fiction.").

### 3. There Was No "Forced" Labor

Overseas Plaintiffs' forced labor claim cannot possibly proceed because the undisputed material facts show that all the work performed by Plaintiffs was voluntary. UMF 76, 77.

### 4. Plaintiffs Cannot Pursue a CIDT claim Because That would Require State Action under International Law

"Torture and summary execution … are proscribed by international law only when committed by state officials or under color of law." *Kadic v. Karadzic*, 70 F.3d 232, 243 (2d Cir. 1995). Cruel, inhuman, or degrading treatment, often called CIDT, is generally treated in international law as part of a continuum of prohibited ill treatment in which torture is the aggravated subset. *Hilao v. Est. of Marcos*, 103 F.3d 789, 794–95 (9th Cir.). Thus, CIDT are embedded with the requirement that the plaintiff demonstrate state action. See *Al Shimari v. CACI Premier Tech., Inc.*, 263 F. Supp. 3d 595, 601 (E.D. Va. 2017) ("The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 34 I.L.M. 590 (1995), speak in terms of actions committed by state actors or persons acting under color of law, torture claims are not actionable against private parties when not perpetrated in the course of genocide or war crimes[.]")

Even if Plaintiffs were somehow able to prove their claims and overcome all of the other barriers discussed above, they still would not be able to proceed because

MARTORELL LAW APC
Litigation & Trial Counsel

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

the undisputed facts show there was no state action here: Yeezy is not a foreign government or a contractor for one. UMF 122. The company has no business ties to any governments anywhere. *Id.* Yeezy has never formally or informally coordinated with a government entity or government official. *Id.*

### 5. Plaintiffs' Alleged Harm Does Not Constitute Cruel, Inhuman, Or Degrading Treatment Under International Law

Plaintiffs' alleged CIDT claims cannot possibly succeed because they do not meet the requisite threshold to be considered Cruel, Inhuman, or Degrading Treatment. Courts have dismissed these type of actions when they "bear a strong resemblance to intentional infliction of emotional distress." *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1183 (C.D. Cal. 2005). That is Plaintiffs' case, at best. Plaintiffs performed their work entirely over the internet—they could have turned their laptops off at any time to avoid the alleged harm. See UMF 43, 117.

### C. Yeezy is Entitled to Judgment on Plaintiffs' Fair Labor Standards Act (FLSA) Claims

#### 1. Overseas Plaintiffs Cannot Pursue FLSA Claims Because the Statute Does Not Apply Outside the United States

Overseas Plaintiffs cannot pursue FLSA claims as a matter of law because the wage and overtime provisions do not apply to any employee whose services are performed during the workweek in a foreign country. 29 U.S.C. § 213(f) ("The provisions of sections 206, 207, 211, and 212 of this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country[.]"); UMF 111, 112, 113, 114, 115, 116, 117.

#### 2. Plaintiffs Cannot Pursue FLSA Claims Against Yeezy LLC Because They Were Never Employees of The Company

Courts determining the existence of an employment relationship for FLSA claims apply the economic realities test. *Hollis v. R&R Restaurants, Inc*, 159 F.4th 677, 686 (9th Cir. 2025). Factors include: (1) the degree of the alleged employer's

right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id.* Where parties allege joint employer relationships, courts further assess, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*, 52 F.4th 843, 848 (9th Cir. 2022).

The undisputed material facts are overwhelmingly clear that Plaintiffs were never employees of Yeezy—who had no ability to control the manner in which their work was performed, or hire or fire them, because they were a part of an entirely separate entity. UMF 20-42. Yeezy did not create or control the Discord channel where Plaintiffs apparently performed all of their work. UMF 43-53. The main person who Plaintiffs claim was their liaison to Yeezy, Massimo Venezia, had no authority whatsoever to hire, supervise, or make any kind of promises to anyone on behalf of Yeezy. UMF 57-61. No records exist of any of them having been employed by Yeezy in any way, shape or form. UMF 63-103.

Plaintiffs are further precluded because volunteers cannot be employees under the economic realities test. *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 303 (1985); UMF 76, 77.

### 3. Plaintiffs Cannot Pursue FLSA Minimum Wage Claims Because they Cannot Show they Worked Compensable Hours for Defendant

Plaintiffs could not possibly pursue minimum wage claims because they would have to adduce evidence that they worked compensable hours for the company,

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

which is impossible with the present record.  UMF 69, 90, 92, 95, 100, 121.

> **4.      Plaintiffs Cannot Pursue FLSA Overtime Pay Claims Because No Evidence Exists that Plaintiffs Performed Overtime Work**

Plaintiffs' FLSA overtime claim fails for all the same reasons the minimum wage claims fail and, additionally, because no timekeeping records exist because Plaintiffs were never employees.  Yeezy has no timesheets for any of the Plaintiffs and none of the Plaintiffs are in Yeezy's timekeeping system.  UMF 98, 99.

> **D.      Yeezy is Entitled to Judgment on Plaintiffs' Fair Employment and Housing Act (FEHA) Claims**

> **1.      Nonresident Plaintiffs (DaCosta, Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., K.S.) Cannot Pursue FEHA Claims Because the Alleged Work and Injuries Occurred Outside of California**

Similar to the ATS claims, there is a presumption against the extraterritorial application of FEHA which restricts non-residents from pursuing claims that took place outside of California.  *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1859 (1996).  Accordingly, the Overseas Plaintiffs and Plaintiff DaCosta, who lives in New York, cannot pursue FEHA claims because the undisputed material facts show their claims would be premised on conduct occurring outside of California as. UMF 110, 111, 112, 113, 114, 115, 116.  This work was performed entirely online and communications were done over a Discord channel.  UMF 43, 117.  The undisputed facts show that YZYVSN was run by Mr. Venezia who is located in Argentina.  *See* UMF 4, 37, 39.  YZYVSN also operated as a Finnish corporation. UMF 40, 41.  Given that Yeezy was a separate and distinct entity from YZYVSN, it is clear that the focus of Plaintiffs' claims originates from Argentina or Finland.  *See* UMF 20-42 (separates entities).

> **2.      Plaintiffs Cannot Pursue FEHA Claims Against Yeezy LLC Because they were Never Employees of the Company**

For FEHA claims, California applies the Borello factors test to determine

MARTORELL LAW APC
Litigation & Trial Counsel

whether one was an employee. *Arshakyan v. X17, Inc.*, No. CV1604305TJHRAOX, 2019 WL 10097455, at *3 (C.D. Cal. June 21, 2019). The factors are largely the same, with additional factors like whether the parties believed they were forming an employer-employee relationship. *Id.* The factors that carry the most weight are the entity's right to control the manner of the employee's work. *Id.* Thus, applying all the same facts discussed above, the result under FEHA is the same. *See* Section IV.C.2.

Notably, under FEHA, there is a threshold requirement that "[t]o be an employee within the meaning of the FEHA, a plaintiff must receive financial remuneration, either direct or indirect." *Talley v. Cnty. of Fresno*, 51 Cal. App. 5th 1060, 1091 (2020). Since the undisputed facts show there was absolutely no remuneration here, Plaintiffs cannot pursue any FEHA claims. Id. ("As plaintiff earned no sufficient financial remuneration as a result of participation in the AOWP, he could not be deemed an employee under the FEHA, and the court properly granted county's motion for summary judgment as to plaintiff's claims."); UMF 90.

### 3. Plaintiffs Cannot Pursue Age-Related Harassment Claims Because they are All Less than 40-Years-Old

Plaintiffs D.P. and M.A. claim age-related harassment against them based on their youth. However, they are precluded from doing so by the fact that they are under the age of 40. *See* Cal. Gov't Code § 12926(b) ("Age" refers to the chronological age of any individual who has reached a 40th birthday.").

### 4. Plaintiffs Cannot Pursue Sex-Related Harassment Claims

Plaintiff D.P. otherwise appears to allege—in vague language—some type of FEHA harassment claim based on the allegation that he was exposed to "Yeezy Porn." However, this fails. First, there was no Yeezy Porn and Yeezy never controlled the Discord server. UMF 43-53, 104-109. Second, to succeed on a FEHA harassment claim it would need to be shown that this conduct occurred *because* of a protected characteristic, which would be impossible to prove given the lack of

MARTORELL LAW APC

Litigation & Trial Counsel

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

evidence that the alleged conduct even happened in the first place. *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 278–79 (2006) ("to prevail, an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees *because of their sex.*").

### 5. The Harassment Alleged by Plaintiffs Cannot be Imputed to Yeezy LLC

As a part of a hostile work environment claim, a plaintiff must establish that the offending conduct was imputable to the employer. *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). Plaintiffs cannot prove any supervisory harassment imputable to Yeezy because their alleged connection to Yeezy, Massimo Venezia, never had the authority to hire them on behalf of the company or even promise them wages. UMF 56-62.

The non-supervisory imputation analysis similarly fails because—notwithstanding the fact that Yeezy never employed Plaintiffs—it had no awareness of what was going on. "As we have stated, when harassment is by a non-supervisory employee, an employer's liability is predicated not on the conduct itself, but on the employer's response once it learns of the conduct." *Bradley v. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1612, 1631 (2008). In the recent *Kruitbosch* case, the Court of Appeal adopted the same factors applied in Title VII cases to assess when harassing conduct is imputable to an employer in FEHA cases. *Kruitbosch v. Bakersfield Recovery Servs., Inc.*, 114 Cal. App. 5th 200, 217 (2025). Adopting a "totality of the circumstances approach," the court identified "a number of nondispositive factors relevant to the assessment [that include]: whether the harassing conduct occurred: (1) in (or through) a venue or modality that was paid for or hosted by the employer; (2) from or in circumstances the employer had arranged, sanctioned or approved; (3) in a context where the employer was deriving, or could

MARTORELL LAW APC
Litigation & Trial Counsel

be expected to obtain, some benefit; or (4) in the context of employment-related social circumstances where it would be expected that employees would interact and socialize." *Id.* at 218-219 (citations omitted). Here, Yeezy was not involved with YZYVSN's Discord, where all the alleged harassment occurred, whatsoever. UMF 43-53.

### 6. Plaintiffs' Failure to Prevent Harassment Claims Fail

A FEHA failure to prevent claim is considered derivative, meaning it cannot stand alone without a finding that actual discrimination, harassment, or retaliation occurred. If the underlying claim of unlawful conduct fails, the failure to prevent claim fails as well. Here, since Plaintiffs cannot succeed on their FEHA claims, the failure to prevent claim fails as well.

### E. Yeezy is Entitled to Judgment on Plaintiffs' Fraud Claims

Although described generally as intentional misrepresentation, Plaintiffs appear to substantively plead what is essentially promissory fraud.

The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). Promissory fraud is a subspecies of fraud and deceit. *Id.* A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. *Id.* An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.

First and foremost, Plaintiffs' fraud claim fails because there is no evidence that Yeezy or its agents promised to (1) purchase the IP, (2) hire any of the plaintiffs, or (3) pay wages to any of the plaintiffs. *See* UMF 16, 69, 78, 79, 91.

Second, Plaintiffs cannot prove fraudulent intent because their entire claim is

MARTORELL LAW APC
Litigation & Trial Counsel

based on the mere nonperformance of a promise. "A declaration of intention, although in the nature of a promise, made in good faith, without intention to deceive, and in the honest expectation that it will be fulfilled, does not constitute fraud, even though it is not carried out." *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 575 (2007). "Mere nonperformance of a promise does not establish that the promise was fraudulent when made." *Id.* at 576. "[T]he intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance." *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th 1169, 1183 (2013). To support this, Plaintiffs purport that "[i]nternal communications among Defendants' representatives indicate that they never intended to honor their promises and were instead focused on exploiting Plaintiffs' labor for minimal cost." FAC, ¶ 343. However, no such documents exist. Nor is it clear how Plaintiffs could have possibly alleged that in good faith absent any internal communications from Yeezy. Further, Yeezy's course of conduct at the beginning of the assessment of the potential deal shows that the company was not acting in bad faith and did desire to develop an application at that time. See UMF 7-12.

While Plaintiffs do not plead any agency theories of liability, they could not have relied on any promises made by Massimo Venezia.

First, if Massimo generally promised Plaintiffs they would be paid wages for their work on YZYVSN, that would be a claim against YZYVSN and not Yeezy. Yeezy never hired any of the plaintiffs and they were never employees. UMF 63-103. Yeezy LLC never purchased the YZYVSN entity or its IP. UMF 15-16. There are no facts from which they could possibly claim a basis to think they were.

Second, Massimo's alleged conduct cannot be imputed to Yeezy. To prove that Yeezy was liable for statements made by Massimo Venezia, Plaintiffs must show that Mr. Venezia was acting within the scope of his employment when then alleged tortious conduct occurred. CACI 3701, 3720; *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (1995) ("an employer is vicariously

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

liable for the torts of its employees committed within the scope of the employment."); *RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1099 (2017) ("[A] principal is charged only with the knowledge of an agent acquired while the agent was acting in that role and within the scope of his or her authority as an agent."); *Ducey v. Argo Sales Co.*, 25 Cal. 3d 707, 722 (1979) (burden of proof is on plaintiffs to show tortious act was committed within the scope of employment).

Conduct is within the scope of employment if (a) it is reasonably related to the kinds of tasks that the employee was employed to perform; or (b) it is reasonably foreseeable in light of the employer's business or the employee's job responsibilities. CACI 3720. "An intentional tort is foreseeable, for purposes of respondeat superior, only if *in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Lisa M.*, 12 Cal. 4th at 302 (emphasis in original). "The question is not one of statistical frequency, but of a relationship between the nature of the work involved and the type of tort committed. The employment must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." *Id.* "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when the facts are undisputed and no conflicting inferences are possible." Id. at 299.

Here, Mr. Venezia was only hired by Yeezy as a consultant to assess the propriety of developing the final Yeezy App and, as discussed above, he was never given the authority to hire employees, promise wages, or even to externally represent Yeezy LLC in anyway. UMF 55-62. Given that this would have been totally unrelated to Yeezy's personnel management and hiring operations, any promises of employment or wages by him to Plaintiffs—if such promises did occur—would have been entirely unanticipated by Yeezy. The company could not have predicted that an app developer would begin to unilaterally taken on management level actions—if he

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel

did, in fact, do so.   As such, given this lack of relatedness and foreseeability, these alleged promises cannot be imputed to Yeezy LLC.  See *Lisa M.*, 12 Cal. 4th at 302.

Furthermore, Plaintiffs cannot prove reasonable reliance.  "After establishing actual reliance, the plaintiff must show that the reliance was reasonable by showing that (1) the matter was material in the sense that a reasonable person would find it important in determining how he or she would act; and (2) it was reasonable for the plaintiff to have relied on the misrepresentation."  *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014) (citations omitted).  This would have been impossible because the plaintiffs signed volunteer agreements and the Asset Purchase Agreement was never signed.  UMF 16, 76.  This is enough to defeat the promissory fraud claim.  *See Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393-94 (2006) (terminated employee's admission that he read, understood and signed a letter unambiguously stating his employment was at-will defeated reliance element of claim that he was falsely promised indefinite employment so long as he performed well).

**F.      Yeezy is Entitled to Judgment on Plaintiffs' Quantum Meruit Claim**

"To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made."  *Cnty. of Santa Clara v. Superior Ct.*, 14 Cal. 5th 1034, 1049–50 (2023).  "It is the expectation of the parties existing at the time the services were rendered or the benefits conferred that controls."  *Payne v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 128 Cal. App. 2d 295, 304 (1954).

Here, the multiple months of salary that Plaintiffs are seeking cannot possibly be justified by even a generous reading of the factual record.  Most of the work Plaintiffs performed was before they had ever even reached out to Yeezy.  UMF 7-19.  There were no signed agreements and no app was ever delivered.  Id.  Similar to the lack of reasonable reliance for the fraud claim, Plaintiffs had no basis for

31

MARTORELL LAW APC

Litigation & Trial Counsel

expecting compensation from Yeezy given the volunteer agreements and the fact they were working for a totally separate entity.  UMF 20-42, 76.  Indeed, as with the fraud claim, a party cannot pursue a quantum meruit cause of action they do not own. *Herman v. Blackman*, 142 Cal. App. 2d 613, 617 (1956) ("The cause of action to recover the money was in the corporations.  Blackman has no assignment of the corporations claims. He does not own the causes of action on which judgment was rendered.  It was therefore improper to render judgment in his favor on the cross-complaint.")

Shockingly, in one of the Discord chats produced by Plaintiffs, a YZYVSN member clearly states: "Before the news of YZY buying the app all of us were saying we only do this for Ye and the experience for the resume[.]"  UMF. 123

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Summary Judgment in favor of Yeezy and against all Plaintiffs as to all causes of action.

Dated:  February 13, 2026                    **MARTORELL LAW APC**


                                             */s/ Evan Miller*
                                             Eduardo Martorell
                                             Christopher A. Rosario
                                             Evan Miller

                                             *Attorneys for Defendant,*
                                             *Yeezy LL*

MPA ISO DEFENDANT YEEZY LLC'S MOTION FOR SUMMARY JUDGMENT

MARTORELL LAW APC
Litigation & Trial Counsel