UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                          Date: April 3, 2026

Title:    Shemar DaCosta et al v. Yeezy LLC et al

Present: The Honorable Michelle Williams Court, United States District Judge

|                 T. Jackson                 |              Not Reported              |
| :----------------------------------------: | :------------------------------------: |
|                Deputy Clerk                |        Court Reporter / Recorder       |

|   Attorneys Present for Plaintiffs:  |   Attorneys Present for Defendants:  |
| :----------------------------------: | :----------------------------------: |
|                 N/A                  |                 N/A                  |

**Proceedings: (IN CHAMBERS) THE COURT GRANTS PLAINTIFFS' MOTION TO WITHDRAW DEEMED ADMISSIONS (DKT. [62]) AND GRANTS IN PART AND DENIES IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. [77])**

Before the Court are two matters. One is a motion for summary judgment ("Motion") filed by Defendant Yeezy LLC ("Defendant" or "Yeezy"). Dkt. # 77, 77-1 ("*Mot.*").[1] In support of the MSJ, Defendant filed a Statement of Undisputed Facts, Dkt. # 77-6, the Declarations of Milo Yiannopoulos, Dkt. # 77-2 ("*Yiannopoulos Decl.*"), Bianca Censori, Dkt. # 77-3 ("*Censori Decl.*"), and Evan Miller, Dkt. # 77-4 ("*Miller Decl.*"), and exhibits, Dkt. # 77-8–77-42. Plaintiffs Shemar Dacosta, Pholoso Mofokeng, Miles Jackson-Lea, Olakunle Olatunji, R.M., M.A., D.P., and K.S. (collectively, "Plaintiffs") opposed. Dkt. # 64 ("*Opp.*"). In support of the Opposition, Plaintiffs filed a Statement of Genuine Issues, Dkt. # 66, the Declaration of Benjamin Lockyer, Dkt. # 67 ("*Lockyer Decl.*"), and supporting exhibits, Dkt. # 67-1–67-39.[2] Defendant filed a reply brief, Dkt. # 70 ("*Reply*"), evidentiary objections, Dkt. # 70-1, a Reply to Plaintiffs' Statement of Genuine Issues, Dkt. # 70-2 ("*UMF*"), the Reply Declaration of Evan Miller, Dkt. # 70-4, and additional exhibits.

---

[1] The Motion was originally filed at Docket No. 58 under seal. The Court subsequently ordered Defendant to refile the Motion and all accompanying documents, except those for which the Court had found good cause to seal, on the public docket. *See* Dkt. # 76.

[2] Plaintiffs also manually lodged twelve exhibits with the Court on a USB drive, *see Lockyer Decl.* Exs. 1, 19-21, 24-28, 31-33, and 36, but failed to file a Notice of Lodging.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:        Shemar DaCosta et al v. Yeezy LLC et al


The other is Plaintiffs' motion to withdraw their deemed admissions pursuant to Federal Rule of Civil Procedure 36(b) ("Motion to Withdraw Deemed Admissions"). Dkt. # 62-1 ("*Mot. Withdraw*"). Plaintiffs also filed a supplemental memorandum in support of its Motion to Withdraw pursuant to Local Rule 37-2.3. Dkt. # 72. Defendant did not file a supplemental memorandum, so the Court construes Defendant's positions in the motion's "Joint Stipulation" as its opposition. *See Mot. Withdraw.*

The matters are appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers, the Court **GRANTS** Plaintiffs' Motion to Withdraw Deemed Admissions and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.

I.      Motion to Withdraw Deemed Admissions

Because Defendant relies on admissions from Plaintiffs deemed admitted due to either an untimely response or failure to respond, the Court begins with the Motion to Withdraw Deemed Admissions.

        A.      Background

Plaintiffs in this matter are eight employees, some of whom are minors, who allege that they worked on the YZYVSN mobile application ("App") around the spring of 2024. Dkt. # 19 ("*FAC*") ¶ 24. They allege the Yeezy company did not pay team members for long working hours and subjected them to cruel and derogatory behavior that constituted a hostile work environment. *Id.*

Yeezy served requests for admission on all Plaintiffs at 11:53 p.m. on December 10, 2025, the date of the discovery cutoff deadline. Dkt. # 62-3 ("*Miller RFA Decl.*") ¶ 3; Ex. 1 (Def.'s service email). Under Federal Rule of Civil Procedure 36, Plaintiffs' responses were due thirty days later, on January 9, 2026. Fed. R. Civ. P. 36. On January 10, 2026, at 12:02 a.m., Plaintiffs sent their responses to Defendant's requests for admission. *Miller RFA Decl.* ¶ 4, Ex. 2. One of the documents' file names included the name Mofokeng ("Mofokeng RFA Response.pdf"), but the caption page stated the name of Plaintiff Olatunj, and the name "Mofokeng" is not contained within the document. *Miller RFA Decl.* ¶ 5, Ex. 2. Plaintiff's counsel asserts that the response from Plaintiff Mofokeng was accidentally captioned with the name of another Plaintiff. See Dkt. # 62-2 ("*Lockyer RFA Decl.*") ¶¶ 3–6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                                Date: April 3, 2026

Title:    Shemar DaCosta et al v. Yeezy LLC et al

B.    <u>Legal Standard</u>

Requests for admission are governed by Federal Rule of Civil Procedure 36.  The purpose of Rule 36 is to provide for "truth-seeking" in litigation and "efficiency in dispensing justice."  *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (citing Fed. R. Civ. P. 36(b) advisory committee notes).  Rule 36 provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  Rule 36(a)(3) is self-executing.  *See id.* "A matter admitted under [Rule 36(a)(3)] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).

A court may permit withdrawal or amendment if doing so would "promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  *Id.*; *see Conlon*, 474 F.3d at 621 (noting Rule 36(b) permits exercise of discretion to grant relief).  Thus, the court has discretion to grant relief only when: (1) presentation of the merits of the action will be promoted, and (2) the party who obtained the admission must not be prejudiced by the withdrawal.  *See Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).

C.    <u>Application</u>

i.    *Presentation of the Merits*

The first factor of the Rule 36(b) test is satisfied when "upholding the admissions would practically eliminate any presentation of the merits of the case."  *Conlon*, 474 F.3d at 622 (*quoting Hadley*, 45 F.3d at 1348); *see Sonoda v. Cabrera*, 255 F.3d 1035, 1039-40 (9th Cir. 2001) (finding no abuse of discretion to allow withdrawal of admissions where admissions would effectively eliminate a merits determination).

Plaintiffs have met their burden of establishing that upholding the admissions would foreclose their ability to present the merits of the case.  To be sure, Plaintiffs do not offer a compelling justification for its decision to wait until nearly midnight to begin serving its responses, or for its error in the caption page of the file pertaining to Mr. Mofokeng.  Nonetheless, many of the admissions go to ultimate issues in the case.  In support of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                                      Date: April 3, 2026

Title:      Shemar DaCosta et al v. Yeezy LLC et al

Defendant's Motion for Summary Judgment, Defendant includes some 20 material facts that are undisputed "pursuant to Plaintiffs' deemed admissions." *See generally UMF*, e.g., *UMF* ¶¶ 20, 37, 39, 63–77.   Many of these purportedly undisputed facts concern the employment relationship between Yeezy and YZY VSN employees, which is at the heart of this employment and hostile workplace dispute. *See Mot.* 16–19.  Defendant argues that the factual issues decided by the deemed admissions defeat each of Plaintiffs' causes of action.  *Id.* 19.   Thus, if the Court were to deny Plaintiffs' request, Plaintiffs would be deprived of the opportunity to present the merits of its case.

The Court comes to the same conclusion as to the requests for admission directed at Mr. Mofokeng.   The Court is satisfied that the file name with Mofokeng in the title ("Mofokeng RFA Response.pdf"), coupled with the fact that two documents were presented as to Plaintiff Olatunji, demonstrates the RFA response was drafted on Mr. Mofokeng's behalf.  *See Miller RFA Decl.* ¶ 5; *Lockyer RFA Decl.* ¶ 3.

Public policy favors resolving a case on its merits. *See Moneymaker v. CoBen (In re Eisen)*, 31 F.3d 1447, 1454 (9th Cir. 1994).   Because denying Plaintiff's motion to withdraw deemed admissions would functionally decide large swaths of the case in Defendant's favor, Plaintiffs have met their burden as to presentation of the merits.

### ii.   *Prejudice to Defendants*

With respect to the second factor, Defendant has the burden of establishing prejudice.  *See* Fed. R. Civ. P. 36(b); *see Conlon*, 474 F.3d at 622.   The prejudice contemplated by Rule 36(b) is not merely that the party who obtained the admission will now have to convince the factfinder of its truth, but instead, it relates to the difficulty a party may face in proving its case, at trial, if such admission is withdrawn. *See id.* at 622–23; *Hadley*, 45 F.3d at 1348.  Inconvenience does not rise to the level of prejudice to justify a denial of a motion to withdraw. *See Sonoda*, 255 F.3d at 1039 (citing *Hadley*, 45 F.3d at 1349).   However, the timing of a motion to withdraw can be persuasive. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985) (concluding motion to withdraw made during middle of trial, after plaintiff had relied heavily on the admissions, was prejudicial); *Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, No. C05-00198 JWHRL, 2007 WL 1140464, at *5 (N.D. Cal. Apr. 17, 2007) (granting motion to withdraw admissions where defendants responded a year and a half after being served with requests for admission, but there was no prejudice and trial was not set for several months).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                                   Date: April 3, 2026

Title:       Shemar DaCosta et al v. Yeezy LLC et al

Defendant argues prejudice exists because Plaintiffs waited until Defendant sought to use the deemed admissions in a summary judgment motion to seek their withdrawal. *Mot. Withdraw* 15.  However, service was only delayed by minutes.  Plaintiffs' belief that Defendant would not consider the admissions deemed admitted, and thus their failure to move to withdraw earlier, is justifiable.  Nor does Defendant's argument that it will be prejudiced because "[i]t is unclear how Defendant will otherwise obtain the discovery it seeks absent the deemed admissions" justify denial of the motion.  *Mot.* 15.  Defendant waited until the final minutes before the discovery cutoff to serve its requests for admission. Its lack of needed discovery does not constitute prejudice stemming from the timing of this motion to withdraw.

For these reasons, Defendant has not carried its burden to meet the second prong.

D.       Conclusion

The two factors in Rule 36(b)'s text are necessary conditions of withdrawal.  *See Conlon*, 474 F.3d at 625.  Since withdrawing the deemed admissions would promote a presentation of the case on the merits and Defendant has not shown it would be prejudiced as a result, the Motion to Withdraw Deemed Admissions is **GRANTED**.  Plaintiffs' requests for admission deemed admitted due to an untimely response, and as to Mr. Mofokeng, due to failure to respond entirely, are **WITHDRAWN**.

II.      Motion for Summary Judgment

The Court turns to the motion for summary judgment.  The Court has reviewed the parties' Separate Statements, the responses thereto, and the underlying evidence and objections.[3]  Except as noted below, the following material facts are sufficiently supported

---

[3] Both parties state evidentiary objections in their responses to the other party's purported uncontroverted facts, on grounds such as lack of authentication, lack of foundation, lack of personal knowledge, and hearsay.  *See generally DSUF*; Dkt. # 70-1.  At this stage, the Court is concerned with the admissibility of the relevant facts at trial and not the form of these facts as presented on a motion for summary judgment.  *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021); *see also Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1215 (E.D. Cal. 2012) ("Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself.").  To the extent the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.     2:24-cv-05547-MWC-E                              Date: April 3, 2026

Title:       Shemar DaCosta et al v. Yeezy LLC et al

by admissible evidence and "admitted to exist without controversy" for purposes of the Motion. L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").[4]

A.      Factual Background

Yeezy is a limited liability company registered in Delaware with its principal place of business in Los Angeles, California. *UMF* ¶ 1. Ye West ("Ye") is the sole manager or member of Yeezy LLC. *Id.* ¶ 2. In March 2024, Ye contemplated launching one or more music albums via his own streaming platform or a mobile app. *Id.* ¶ 3. This led many of his fans to begin their own independent app development projects. *Id.*

YZY VSN (i.e., YEEZY VISION) ("YZYVSN"), started by Massimo Venezia, a resident of Argentina, was one such fan project. *Id.* ¶ 4. YZYVSN was initially an unincorporated group of programmers. *Id.* Plaintiff DaCosta was one of the earliest contributors to join the YZYVSN project after it started. *Lockyer Decl.*, Ex. 2 ("*DaCosta Decl.*") ¶¶ 4, 6.

In what would become known as the "YZYVSN App," YZYVSN sought "to create a platform that enables the whole community to access everything Ye and YZY in one place." *UMF* ¶ 5. On March 17, 2024, after obtaining Yeezy employee Ben Priest's email address through a mutual contact, Mr. Venezia reached out to Yeezy seeking to engage in further discussions. *Id.* ¶ 7. Ben Priest put Mr. Venezia in contact with Yeezy's Chief Technical Officer, Johnathan Solorzano, who emailed Mr. Venezia that day regarding the possibility of Yeezy acquiring YZYVSN's IP. *Id.* ¶¶ 8-9. On March 18, 2024, Mr. Solorzano told Mr. Venezia, "Right now my goal is just understand the capabilities of your team, after that then I can speak with management to work on a contract if it's something we want to move forward with." *Id.*; *Miller Decl.*, Ex. 28. On March 30, 2024, Mr. Venezia sent a message to Plaintiff DaCosta and another YZYVSN member reprimanding

---

relies upon evidence to which a party objects, the objections are **OVERRULED**. To the extent the Court does not, the objections are **DENIED** as moot.

[4] The Court does not include facts without sufficient evidentiary support, including facts supported solely by deemed admissions that have since been withdrawn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:      Shemar DaCosta et al v. Yeezy LLC et al


them for attempting to take over YZY VSN and clarifying his role as the lead and manager of YZYVSN.  *UMF* ¶ 124; *Miller Decl*., Ex. 23.

On or before April 5, 2024, Plaintiffs entered into a YZYVSN Co-Ownership Agreement.  *Id.* ¶¶ 32–33; *see Miller Decl*., Ex. 21 (YZYVSN Co-Ownership Agreement).  Thus, Plaintiffs became all co-owners of varying ownership stakes in YZYVSN.  *UMF* ¶¶ 35–36.

In April 2024, YZYVSN entered into discussions with Yeezy LLC for an agreement to sell the YZYVSN App to Yeezy LLC.  *UMF* ¶ 10.  On April 1, 2024, Mr. Venezia (also known by his nickname, "Venza") sent Mr. Solorzano YZYVSN's tech stack for further review.  *Id.* ¶ 11.  The terms proposed by YZYVSN for the sale of the YZYVSN App to Yeezy LLC were commemorated into a document titled the "Asset Purchase Agreement."  *Id.* ¶ 12; *see Miller Decl*., Ex. 21 (Asset Purchase Agreement).  Mr. Venezia signed the Asset Purchase Agreement on behalf of YZYVSN.  *UMF* ¶ 14.  No person signed the Asset Purchase Agreement on behalf of Yeezy LLC.  *Id.* ¶ 16.

The parties dispute whether, by late April 2024, Yeezy LLC actually finished and acquired the YZYVSN App.  *See UMF* ¶ 15.  The DaCosta and K.S. affidavits refer to the "acquisition process" and of promises to pay Plaintiffs "once the app was completed and acquired."  *Lockyer Decl*., Ex. 3 (K.S. Aff.) ¶ 10; *id.*, Ex. 2 (DaCosta Aff.) ¶ 12.  Plaintiffs also provide an invoice emailed from YZYVSN to Yeezy.  *Lockyer Decl*., Ex. 33 (lodged manually with Court).  According to Plaintiff DaCosta, by late April 2024, the development team had produced a working demonstration version of the application and, to the best of his knowledge, "the demo version was shared with individuals connected to Yeezy."  *DaCosta Decl*. ¶¶ 14–20. Thus, Plaintiff DaCosta attests that the app was delivered.  *Id.* ¶ 20.  However, the YZYVSN App was never available for download on the Apple iOS App Store or the Google Android Play Store.  *See UMF* ¶ 17.

While it is undisputed that YEEZY LLC and YZYVSN are separate business entities, *id.* ¶ 20, and that YZYVSN had its own organizational structure with separate departments for management, marketing, development, design, and video and sound editing, *id.* ¶ 25,[5] the parties do dispute whether YZYVSN is a subsidiary of Yeezy, *id.* ¶

---

[5] YZYVSN registered its trademarks in Argentina.  *UMF* ¶ 26.  YZYVSN also represented itself in formal proposed agreements as a Finnish entity called Valgros.  *See, e.g.*, *Miller Decl*., Ex. 21 (Dkt. # 77-28), at DaCosta v Yeezy_00011.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                              Date: April 3, 2026

Title:     Shemar DaCosta et al v. Yeezy LLC et al

30, whether YEEZY LLC ever owned the business entity YZYVSN, *id.* ¶ 21, and whether Yeezy LLC representatives ever made statements amounting to an intention to purchase the YZYVSN business entity, *id.* ¶ 22, rather than solely to purchase the YZYVSN App intellectual properly, *id.* ¶ 23; *see, e.g.*, *Lockyer Decl.*, Ex. 33 (lodged with Court).

In hopes of launching the final Yeezy App, Yeezy planned to acquire the IP of the two major fan-made apps, YZYVSN and YZY APP, and combine them in-house to launch the final product. *UMF* ¶ 54. Yeezy planned to separately contract with the most talented developers from the fan projects, with the idea that they may later become regular employees. *Id.* ¶ 55. Mr. Venezia was brought on with the title of "Product Lead" at Yeezy and was "responsible for conceptualizing and strategizing the building of digital product." *Id.* ¶ 56, *Yiannopoulos Dec.* ¶ 23. Mr. Venezia, thus, became a "casual consultant" for Yeezy. *Id.* ¶ 22. Mr. Yiannopolos oversaw retaining talent, *id.* ¶ 11, and creation of the final Yeezy App, *id.* ¶ 56. According to Mr. Yiannopolos, Mr. Venezia never had authority to make promises on the company's behalf, to bind the company in any way, to supervise any existing Yeezy staff or contactors, or to terminate employees. *Id.* ¶¶ 22, 61. However, Plaintiffs submit declarations attesting that Mr. Yiannopoulos, Ms. Censori, and Ye vested Mr. Venezia with apparent authority. *See UMF* ¶ 58. YZYVSN leadership communicated with Yeezy using designated email addresses for the project, such as "venza@yzy.vision". *Id.* ¶ 29. Mr. Venezia worked as a consultant for Yeezy for purposes of completing the final Yeezy application and was given a Yeezy email address. *Id.* ¶ 30. Mr. Venezia also had at least some legal authority to act on behalf of YZYVSN. *Id.* ¶ 38.

The parties dispute whether Yeezy used Discord to communicate with the YZYVSN team. *UMF* ¶¶ 47, 49. During the relevant time period, YZYVSN used Discord as one of its primary methods of communication. *Id.* ¶ 43. Plaintiff DaCosta attests that "individuals associated with Yeezy were discussed" in the Discord channel, and that "instructions connected to Yeezy were communicated through project leadership." *DaCosta Decl.* ¶ 22. However, no one from Yeezy was ever invited to, or joined, the YZYVSN Discord. *Yiannopoulos Dec.* ¶ 18. According to Mr. Yiannopoulos, Yeezy did not create, control, maintain, administer, or have any knowledge or oversight whatsoever of any Discord servers or channels, before, during or after the failed acquisition of YZYVSN. *Id.* Plaintiff DaCosta attests that Mr. Yiannopoulos generally participated in project discussions regarding app development. *DaCosta Decl.* ¶ 8.

The parties dispute whether any of the Plaintiffs were ever employees of Yeezy. *See UMF* ¶ 89. According to Mr. Yiannopoulos, no Plaintiff was ever interviewed for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                              Date: April 3, 2026

Title:        Shemar DaCosta et al v. Yeezy LLC et al

employment by Yeezy.  *UMF* ¶ 78, *Yiannopoulos Decl.* ¶ 24.  Nor was any Plaintiff ever onboarded as an employee, granted access to company systems, provided a company email address, issued a mobile telephone, included in weekly departmental staff calls, declared in any company tax statements, listed in an employee directory, given an offer letter, or given various other indicia of employment.  *See UMF* ¶¶ 78-102.  The parties similarly dispute whether Plaintiff DaCosta's representations as an employee or contractor of Yeezy on LinkedIn, including his job title and dates of employment, are fabricated.  *Id.* ¶ 103.

Several Plaintiffs attest that a video "coming from Bianca Censori" was shared with a minor team member with instructions to work on a nude digital model.  *DaCosta Decl.* ¶¶ 30-34.  Defendant disputes that any representative of Yeezy LLC ever shared sexually explicit material with any of the Plaintiffs, or whether they were instructed to work on a "Yeezy Porn" product at Yeezy.  *Compare UMF* 104-108 *with DaCosta Decl.* ¶ 33 ("I personally observed this [digital nude] model and observed team members discussing and working on it"); Ex. 20 (video lodged with Court) (Bianca Censori sending nude image with instructions to edit in Photoshop); *Lockyer Decl.*, Ex. 7 (D.P. Aff.) ¶ 10.  According to Mr. Yiannopoulos, Yeezy Porn was proposed, but his resignation in May 2024 ensured it did not come about.  *Yiannopoulos Decl.* ¶ 30 ("There has never been any such product as 'YEEZY PORN' or 'YZY PORN,' a fact I can state with absolute certainty because I resigned my position in May 2024 precisely to ensure that it did not come about . . . While friends and consultants of the company may . . . have . . . taken meetings to discuss business models for such a content line, no content was ever made.").  Ms. Censori also attests "Yeezy Porn" was "not a project that ever came to fruition."  *Censori Dec.* ¶¶ 6-8.

Plaintiff DaCosta is a resident of New York.  *UMF* ¶ 110.  Plaintiff Mofokeng is a resident and citizen of South Africa.  *Id.* ¶ 111.  Plaintiff Jackson-Lea is a resident and citizen of England, UK.  *Id.* ¶ 112.  Plaintiff Olatunji is a citizen of Nigeria and resides in FCT Abuja, Nigeria.  *Id.* ¶ 113.  Plaintiff R.M. is a resident and citizen of England.  *Id.* ¶ 114.  Plaintiff M.A. a resident and citizen of Hungary.  *Id.* ¶ 115.  Plaintiff K.S. is a resident of the United Arab Emirates and a citizen of the United States.  *Id.* ¶ 116.    Plaintiffs performed their work entirely online, and the YZYVSN team communicated via a Discord Channel for their work.  *Id.* ¶ 117.  Plaintiffs did not pursue legal remedies relating to their allegations in the complaint in their jurisdictions prior to the filing of this action.  *Id.* ¶ 125.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:   Shemar DaCosta et al v. Yeezy LLC et al

---

B.     Procedural History

On June 29, 2024, Plaintiffs filed this lawsuit.  Dkt. # 1.  On September 17, 2024, Plaintiffs filed a First Amended Complaint asserting the following causes of action against Defendant: (1) Forced Labor Under the Alien Tort Statute ("ATS"); (2) Cruel, Inhuman, or Degrading Treatment Under the Alien Tort Statute; (3) Failure to Pay Minimum Wage Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.); (4) Failure to Pay Overtime Under the FLSA, 29 U.S.C. §§ 201 *et seq*.); (5) Harassment / Hostile Work Environment Under the California FEHA; (6) Race/National Origin Discrimination Under the California FEHA; (7) Failure to Prevent Harassment Under the California FEHA; (8) Fraud – Intentional Misrepresentation; and (9) Quantum Meruit.  *FAC*.  Plaintiffs seek unpaid and overtime wages; general, special, compensatory, punitive, exemplary, and emotional distress damages; an accounting for and restitution of wages unlawfully withheld; civil penalties as permitted under the FLSA; reasonable attorneys' fees pursuant to the FLSA and California FEHA and costs.  *Id.* at 47.

C.     Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case.  *See id.*  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence.  *Id.* at 255.  Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The evidence must be capable of presentation at trial in a form that would be admissible.  *See*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:       Shemar DaCosta et al v. Yeezy LLC et al

Fed. R. Civ. P. 56(c)(2).  "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001); *see also Fed. Deposit Ins. Corp. v. N.H. Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 2001) (stating that "the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment") (internal quotation marks and citation omitted).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

D.    <u>Discussion</u>

The Court addresses Defendant's arguments in favor of summary judgment in turn.

i.       *Alien Tort Statute Claims (Counts One and Two)*

Plaintiffs Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., and K.S. (collectively, "Overseas Plaintiffs") assert two claims under the Alien Torts Statute ("ATS"), 28 U.S.C. § 1350: forced labor and cruel, inhuman, or degrading treatment ("CIDT").

a.       *K.S., a U.S. citizen, cannot bring ATS claims.*

It is well-settled that a U.S. citizen cannot bring a claim under the ATS. *Joga v. Jogadinnemeeda*, No. 18-cv-07078 DDP (JPRx), 2019 WL 3205795, at \*3 (C.D. Cal. July 16, 2019) ("Plaintiff is a U.S. citizen, therefore, Plaintiff cannot assert a claim under Section 1350.").  Here, it is undisputed that K.S. lives in the United Arab Emirates but is a citizen of the U.S. *UMF* ¶ 116.[6]  Thus, the Court **GRANTS** summary judgment as to K.S. on both ATS claims.

b.       *Whether Plaintiffs' purported harm concerned the U.S.*

Next, Defendant argues the ATS causes of action are precluded by the legal presumption against its extraterritorial application.  Defendant argues the claims fail because the Overseas Plaintiffs completed their work in other countries.  YZYVSN was run by Massimo Venezia from Argentina; and YZYVSN operated as a Finnish corporation. *Mot.* 20–22.  Thus, the conduct underlying Plaintiffs' purported harm did not touch and

---

[6] Additionally, Plaintiffs concede this point. *Opp.* 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:       Shemar DaCosta et al v. Yeezy LLC et al

concern the United States.  *Id.*  Defendant argues Yeezy's mere corporate presence and general corporate activities, such as "minor electronic communications over the internet," are insufficient to create jurisdiction where there otherwise would be none.  *Mot.* 22.

"It is a 'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"  *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023) (quoting *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)). The Supreme Court has "repeatedly explained that this principle, which we call the presumption against extraterritoriality, refers to a 'presumption against application to conduct in the territory of another sovereign.'"  *Id.* (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 119 (2013) (citing *Morrison*, 561 U.S. at 265).  "In other words, exclusively foreign conduct is generally the domain of foreign law."  *Id.* (quotation and brackets omitted).  The ATS is jurisdictional, and the Supreme Court has applied this presumption against extraterritoriality to the ATS.  *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632-33 (2021).

Where a statute, as here, does not apply extraterritorially, "plaintiffs must establish that the conduct relevant to the statute's focus occurred in the United States."  *Id.* at 633. This analysis "is designed to apply the presumption against extraterritoriality to claims that involve both domestic and foreign activity, separating the activity that matters from the activity that does not."  *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 419 (2023).  "[I]f the relevant conduct occurred in another country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U. S. territory."  *Id.*  "[I]f all the conduct regarding the violations took place outside the United States, then courts do not need to determine the statute's focus at all." *Id.* (cleaned up).   Under this analysis, a domestic application of the ATS is not satisfied by a defendant's "mere corporate presence," and "general corporate activity is no better." *Nestlé USA, Inc.*, 593 U.S. at 634 ("To plead facts sufficient to support a domestic application of the ATS, plaintiffs must allege more domestic conduct than general corporate activity.").

In *Nestlé*, the plaintiffs alleged that Nestlé purchased cocoa from farms in the Ivory Coast and provided "technical and financial resources—such as training, fertilizer, tools, and cash," to those farms, which "aided and abetted child slavery."  *Id*. at 630.  To establish a domestic connection, the plaintiffs alleged that "all major operational decisions" by Nestlé, plus originating financial agreements, occurred in the United States.  *Id*. at 631-62; *see Doe v. Nestlé, S.A.*, 906 F.3d 1120, 1126 (9th Cir. 2018), rev'd sub nom. *Nestlé*, 593

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    2:24-cv-05547-MWC-E                                          Date: April 3, 2026

Title:       Shemar DaCosta et al v. Yeezy LLC et al


U.S. 628.  The Supreme Court held that those allegations were insufficient to show that "the conduct relevant to the statute's focus occurred in the United States", because they did "not draw a sufficient connection between the cause of action," aiding and abetting forced labor overseas, and the alleged domestic conduct, making operational decisions and originating financial agreements.  *Nestlé*, 593 U.S. at 634.

Here, the record contains facts that a reasonable jury could find constitute domestic conduct exceeding general corporate activity.  Plaintiffs have put forth evidence that Yeezy, through U.S.-based personnel and communications, directed the YZYVSN team's work and projects, forced Plaintiffs to develop the app for Yeezy's benefit, unpaid.  Rather than "aiding and abetting" forced labor overseas, a reasonable jury could find Plaintiffs' conduct constitutes the actual extraction of labor from Plaintiffs, which is domestic conduct relevant to the ATS's focus.  *See Nestlé*, 593 U.S. at 634.

For these reasons, the Court does not grant summary judgment as to the remaining Plaintiffs (other than K.S.) on the ATS claims due to the presumption against its extraterritorial application.

> c.      *Whether Plaintiffs have shown evidence of forced labor or harm constituting Cruel, Inhuman, or Degrading Treatment ("CIDT") under international law*

Next, Defendant argues the ATS causes of action fail because there is no evidence that the Plaintiffs, who pursued a collaboration with Yeezy and remotely performed their work overseas, were subjected to forced labor or any form of torture.  Forced labor would require some kind of coercion, *i.e.*, threats of physical or psychological harm.  Defendant argues that Plaintiffs volunteered.  *Mot.* 22.  It also argues that Plaintiffs "could have turned off their computers at any time to avoid their 'harm.'"  *Mot.* 23.

These arguments fail.  First, Defendant's argument that Plaintiffs "volunteered" is based solely on deemed admissions that have been withdrawn, and the Court finds no other evidence in the record supporting Defendant's contention that Plaintiffs signed an agreement that their work was voluntary.  *See UMF* ¶ 76.

Second, courts addressing forced labor claims look to whether the work was performed under the menace of penalty and whether the person offered himself voluntarily, taking account of coercion, deceit, and serious nonphysical harms.  *Adia v. Grandeur*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:    Shemar DaCosta et al v. Yeezy LLC et al

*Mgmt., Inc.*, 933 F.3d 89, 93 (2d Cir. 2019); *see also Aragon v. Ku*, 277 F. Supp. 3d 1055, 1067 (D. Nev. 2017). "Serious harm" may include psychological, reputational, or financial harm sufficient to compel a reasonable person in the same circumstances to continue working. *Adia*, 933 F.3d at 93. Similarly, "the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment defines CIDT as any 'acts which inflict mental or physical suffering, anguish, humiliation, fear and debasement, which fall short of torture.'" *Shiguago v. Occidental Petroleum Corp.*, No. CV 06-4982 ODW (CWX), 2009 WL 10671585, at *4 (C.D. Cal. Aug. 5, 2009).

Plaintiffs have provided ample declaration or affidavit evidence stating that they were induced and kept working through false promises of pay, pressure tied to future opportunities, threats of exclusion, manipulation of minors, coercive demands tied to NDAs and identity disclosures, and extreme project deadlines imposed by people acting for Defendant. *See Lockyer Decl.* Exs. 2-12. A reasonable jury could believe Plaintiffs' version of events and find they were subject to coercion and deceit amounting to forced labor and/or cruel and inhuman degrading treatment, despite the ability to escape physical harm. Whether Defendant's conduct rendered Plaintiffs' labor non-voluntary is a factual question not appropriate for resolution at summary judgment.

Lastly, Defendant argues the CIDT claims fail because those require some form of state action by Yeezy, which is not a foreign government or a contractor. *Mot.* 22–23. Plaintiff cites two cases where CIDT claims were allowed to proceed against private actors: *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004), and *Doe v. Unocal Corp.*, 963 F. Supp. 880, 891–92 (C.D. Cal. 1997). *Opp.* 22. Similarly, in *Shiguago v. Occidental Petroleum Corp.*, No. CV 06-4982 ODW (CWX), 2009 WL 10671585 (C.D. Cal. Aug. 5, 2009), this court collected cases where corporations were not immune from ATS liability. The Court found, albeit at the motion to dismiss stage, that Plaintiffs' CIDT claims were actionable against a corporation. *Id.* at *5. In light of cases contrary to Defendant's position, Defendant has not shown that the CIDT claim can be resolved as a matter of law.

For the foregoing reasons, the Court **GRANTS** summary judgment on the ATS claims (Counts One and Two) as to Plaintiff K.S. only, but **DENIES** the motion on these claims in all other respects.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                          Date: April 3, 2026

Title:        Shemar DaCosta et al v. Yeezy LLC et al

     *ii.*     *FLSA claims (Counts Three and Four)*

Plaintiffs pursue two claims under the federal Fair Labor Standards Act ("FLSA"): failure to pay minimum wage (29 U.S.C. §§ 206, 207, 216), and failure to pay overtime (29 U.S.C. §§ 207, 216).  *FAC* ¶¶ 293–307.

     *a.*     *Whether Overseas Plaintiffs May State FLSA Claims for Overtime and Minimum Wage*

Defendant argues first that the Overseas Plaintiffs cannot pursue FLSA claims, because certain provisions in the statute do not apply outside the United States.  *Mot*. 23.

29 U.S.C. § 213(f) provides, "The provisions of sections 206, 207, 211, and 212 of this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country."  In enacting § 213(f), "Congress noted that the [FLSA] was obviously designed to apply to a United States economy, and its application to overseas areas is usually inconsistent with local conditions of employment, the level of the local economy, the productivity and skills of indigenous workers, and is contrary to the best interest of the United States and the foreign areas." *Cruz v. Chesapeake Shipping, Inc*., 932 F.2d 218, 226 (3d Cir. 1991) (quotation and brackets omitted).  At the same time, FLSA exceptions are affirmative defenses, and they "are to be narrowly construed against the employers seeking to assert them."  *Arnold v. Ben Kanowsky, Inc*., 361 U.S. 388, 392 (1960); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) ("the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.").

Matters of statutory interpretation are issues of law, not fact, and it is "the province and duty of the judicial department to say what the law is."  *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980).  Under a plain reading of the statute, the Court finds services "performed in a workplace within a foreign country" refers to work completed in a certain geographic location.  *See* 29 U.S.C. § 213(f).  The fact that work is done virtually or online does not nullify the physical location of the person performing the service.

Defendant has also carried its burden of proof that it is entitled to the affirmative defense.  It is undisputed that Overseas Plaintiffs reside in foreign countries, and Overseas Plaintiffs do not put forth any evidence suggesting they completed any work within the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:      Shemar DaCosta et al v. Yeezy LLC et al

U.S.  *See UMF* ¶¶ 110–116.  Lastly, Plaintiffs do not address the argument in Opposition. *See Opp.*

For these reasons, the FLSA exception in 29 U.S.C. § 213(f) applies.  The Court **GRANTS** the motion on the FLSA claims with respect to Overseas Plaintiffs.

> b.      *Whether Plaintiffs were Yeezy employees*

As to DaCosta and D.P., the U.S.-based Plaintiffs, Defendant argues that their FLSA (and the remaining) claims fail as a matter of law, because no Plaintiffs were ever employees of Yeezy.  *Mot.* 23.

With the deemed admissions now withdrawn, a triable issue remains as to whether Yeezy employed Plaintiffs.  For claims under the FLSA, the Ninth Circuit has adopted a four-part "economic reality" test to determine whether the employer-employee relationship exists.  *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), disapproved of on other grounds by *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). These factors include: "Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.*  These factors are only guidelines; courts must look to the "circumstances of the whole activity" in assessing whether the economic reality test is satisfied.  *Boucher*, 572 F.3d at 1091 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).  An individual may be held liable as an employer under the FLSA where the evidence supports a determination that the individual exercised economic and operational control over the employment relationship.  *Id.* (finding that a defendant responsible for handling labor and employment matters, who also held 30% ownership over a company, was an "employer" under the FLSA).  The Ninth Circuit has "long held that whether an employer/employee relationship exists is usually a question of fact for the jury, so long as there is an evidentiary basis for its consideration."  *Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1498 (9th Cir.1995), abrogated on other grounds by *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009).

Here, Plaintiffs submit evidence that Yeezy personnel directed work, set deadlines, controlled meetings, required NDAs and identity documents, discussed payment, and integrated the app development into Yeezy's business plans.  *See, e.g.*, *Lockyer Decl.*, Exs. 21–23; *DaCosta Decl.* ¶¶ 7–9, 22–23, 30–31, 35–36; *see generally Lockyer Decl.,* Exs. 3–

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                          Date: April 3, 2026

Title:      Shemar DaCosta et al v. Yeezy LLC et al

12.[7]  The parties both submit evidence showing the app was not merely speculative, but a project that Yeezy sought to acquire. *UMF* ¶¶ 9, 10, 12.  A reasonable jury could conclude, under the "economic reality" test, that Plaintiffs were employees, under the supervision and for the benefit of Defendant.

For the same reason, the Court rejects Defendant's contention that there is no evidence Plaintiffs worked compensable hours for Defendant or performed overtime work. *Mot.* 24–25.  Each Plaintiff has submitted declaration or affidavit evidence attesting to a certain number of hours worked without pay.  For example, Plaintiff DaCosta submits an affidavit attesting that team members were told they would be paid, that DaCosta worked approximately 144 hours on the application, at times for more than 12 hours per day, and was not paid. *DaCosta Decl.* ¶¶ 13, 39, 51.

Because there is no "absence" of evidence that Plaintiffs worked compensable hours for Defendant or performed overtime work, *see Celotex*, 477 U.S. at 323. summary judgment on the FLSA claims is **DENIED**.

### iii.      FEHA Claims (Counts Five, Six, Seven)

Defendant argues it is entitled to summary judgment on the claims brought under the California FEHA, Cal. Gov. Code § 12940(j)-(k), including hostile work environment, discrimination, and failure to prevent harassment, for several reasons.[8]

---

[7] For example, plaintiff R.M. submitted an affidavit stating that YZYVSN programmers met with Mr. Yiannopolous and Yeezy chief technology officer Mr. Solarzano, that Mr. Yiannopolous personally selected R.M. to assist in finalizing the app in one week, and that R.M. had to sign an NDA and provide personal information. *Lockyer Decl.*, Ex. 11 ¶¶ 8–10, 14.  Plaintiff Olatunji similarly submitted an affidavit stating that Mr. Venzia and Mr. Yiannopoulos were "team leaders", and that Olatunji was pressured into signing an NDA under the threat of non-payment. *Id.*, Ex. 12 ¶¶ 14–15.

[8] Defendant argues it is entitled to summary judgment on the FEHA claims because Plaintiffs were never employees of the company. *Mot.* 23–24.  The Court has found a triable issue as to whether Plaintiff were employees, *supra* section D.iii.b, so the argument is moot.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:      Shemar DaCosta et al v. Yeezy LLC et al


> ### a.   *Whether FEHA may apply to employees outside of California performing work for a California corporation*

First, Defendant argues that all Plaintiffs not located in California, including DaCosta (who lives in New York) and Overseas Plaintiffs (Mofokeng, Jackson-Lea, Olatunji, R.M. M.A., and K.S.) cannot pursue California Fair Employment and Housing Act ("FEHA") claims, because the alleged work and injuries occurred outside of California, and the presumption against the statute's extraterritorial application applies. *Mot.* 25.[9]  Plaintiffs, in turn, assert the relevant question for FEHA claims is whether the challenged employment practices were sufficiently tied to California, including whether the employer is based in California, and whether the operative decisions were made in California.  *Opp.* 23-24 (citing *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1859–60 (1996)).

"California courts presume that the California legislature 'did not intend to give its statutes any extraterritorial effect' unless 'such intention is clearly expressed or reasonably . . . inferred' from the statute's text, its purpose, or legislative history." *Russo v. APL Marine Services, Ltd.*, 694 F. App'x 585, 586 (9th Cir. 2017) (quoting *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)).  "The FEHA contains no such clear evidence of intent."  *Russo*, 694 F. App'x at 586 (citing Campbell v. Arco Marine, Inc., 42 Cal. App. 4th 1850, 1859 (1996)). Accordingly, "the majority of courts in California and other jurisdictions have found that the extraterritorial application of FEHA is determined by the situs of both [(1)] employment and [(2)] the material elements of the cause of action, as opposed to residence of the employee or the employer." *Russo v. APL Marine Services, Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015) (collecting cases), aff'd, 694 F. App'x 585 (9th Cir. 2017); Cal. Gov. Code § 12940(h)(1).  Similarly, for California common law claims, courts look to whether "the conduct which gives rise to liability . . . occurs in California." *Russo*, 135 F. Supp. 3d at 1096 (quoting *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999)).


> ### 1.   *Situs of Employment*

To determine the situs of employment, courts consider "the employee's 'principal place of work,' the employee's 'definite base of operations,' or the 'location where the employee's work holds a substantial connection to.'" *Hill v. Workday, Inc.*, 773 F. Supp.

---

[9] It is undisputed that one plaintiff, D.P., is a citizen of California.  *FAC* ¶ 18; *see UMF*.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05547-MWC-E                    Date: April 3, 2026

Title:   Shemar DaCosta et al v. Yeezy LLC et al

3d 779, 793 (N.D. Cal. 2025) (quoting *Sexton v. Spirit Airlines, Inc.*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487, at *3 (E.D. Cal. Feb. 8, 2023)).

Here, Overseas Plaintiffs are residents of various foreign nations, and Plaintiff DaCosta is a resident of New York. *UMF* ¶¶ 110–116. There is no evidence in the record that any plaintiff (other than D.P., a California citizen) performed work in California. Nonetheless, Plaintiffs have submitted evidence that their work holds a substantial connection to California. It is undisputed that Yeezy's principal place of business is in Los Angeles, California. *UMF* 1. Plaintiffs' evidence supports the inference that key employment decisions were made in California, and that supervision and communications came from California-based personnel. For these reasons, a triable issue exists as to whether the situs of employment was in California.

### 2.    *Situs of the Material Elements of the Claims*

To determine whether the material elements of the cause of action establish a substantial connection to California, courts "look[ ] to the location of where the core of the alleged wrongful conduct occurred," i.e., whether the conduct giving rise to liability occurred within California. *Sexton*, 2023 WL 1823487, at *4; *see also Hill*, 773 F. Supp. 3d at 794.

As discussed in the prior section, Plaintiffs' claims center on their remote employment and asserted discriminatory or retaliatory treatment while Plaintiffs largely worked outside of California. Nonetheless, Plaintiffs submit evidence that the individuals who had decision-making authority over employment decisions and ultimately created what Plaintiffs characterize as a hostile workplace environment worked and resided in California. This is sufficient for the Court to conclude Defendant is not entitled to summary judgment on the FEHA claims on the basis of the presumption against FEHA's extraterritorial application.

Unlike FLSA, which has a statute barring certain provisions of the FLSA from applying to employees who performed work outside of the United States, there is evidence that Plaintiffs' work was substantially connected to California through their situs of employment and the material elements of the causes of action. Thus, even though most Plaintiffs did not perform work within California, the Motion is **DENIED** with respect to Plaintiffs' FEHA claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                    Date: April 3, 2026

Title:    Shemar DaCosta et al v. Yeezy LLC et al

> b.    *Whether a triable issue remains as to age- and sex-related harassment*

Defendant argues the FEHA claims for age-related and sex-related harassment fail as a matter of law. First, it argues that age-related claims of harassment can only be pursued at age forty and up, so D.P. and M.A.'s claims of harassment based on their youth fail. Plaintiffs' opposition, however, clarifies that evidence as to harassment based on their youth is not to support a traditional age discrimination claim, but is relevant as to whether the minors were subjected to a hostile work environment. *Opp.* 24; *see, e.g.*, *Lockyer Decl.*, Ex. 7 (D.P. Aff.) ¶¶ 8, 10 (describing "harassment and bullying from adult team members because of my age"), Ex. 8 (M.A. Aff.) ¶ 8 ("I faced constant harassment and bullying because of my age. Adult team members often belittled me, calling me naïve, incapable, and a child.").

The same reasoning applies to Plaintiffs' sex-based hostile environment allegations involving the request to create "Yeezy Porn". Plaintiffs have produced affidavit evidence, communications and images reflecting sexually explicit material, discussions of "Yeezy Porn," and design-related materials involving explicit content connected to Yeezy personnel such as Bianca Censori. *See, e.g., Lockyer Decl.*, Ex. 20; Ex. 7 (D.P. Aff.) ¶ 10 (describing exposure to "discussions and visual content related to 'YEEZY PORN'"). Though Ms. Censori appears to aver the images are related to her art, *see Censori Decl.* ¶ 6, whether such an explanation is credible, and whether exposure to the images nonetheless created a hostile work environment, is a disputed question of fact for the jury.

Lastly, Defendant argues the alleged harassment cannot be imputed to Yeezy LLC. *Mot.* 27–28. The argument fails.[10] Under California law, an employee's improper acts in the course and scope of employment are attributed to the employer for purposes of tort liability and damages under the doctrine of respondeat superior. *See Perez v. Van Groningen & Sons*, 41 Cal. 3d 962, 967 (1986). A triable issue remains as to whether harassment by Yeezy employees, including Mr. Venezia, may be imputed to Yeezy, because Plaintiffs submit evidence suggesting Yeezy personnel joined the relevant communication channels, monitored and directed YZYVSN's programmers' work, and that project leaders such as Yiannopoulos, Solorzano, Censori, and Venezia acted with actual or apparent authority. *See, e.g.*, *DaCosta Decl.* ¶¶ 7-11; *see supra* Section II.D.iii.b.

---

[10] Defendant makes the same argument as to Plaintiffs' fraud claim. *See Mot.* 29–30. The Court rejects that argument for the same reasons explained here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                              Date: April 3, 2026

Title:      Shemar DaCosta et al v. Yeezy LLC et al

Where the employer's control, knowledge, and ratification are disputed, imputation is a jury question. *See Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006).

For these reasons, the Court **DENIES** the motion with respect to Plaintiffs' FEHA claims.[11]

> iv.   *Fraud – Intentional Misrepresentation and Quantum Meruit (Counts Eight and Nine)*
>
> a.   *Fraud*

"The elements of a fraud or intentional misrepresentation claim are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance, and (5) damage." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 574 (9th Cir. 2022) (citing *Lazar v. Superior Court*, 12 Cal.4th 631 (1996)). "The Ninth Circuit has explained that whether reliance is justified is an issue of fact that should generally be left to the jury." *SewChez Int'l Ltd. v. CIT Grp.*, No. CV 07-1211-SVW (JWJx), 2007 WL 9728573, at *5 (C.D. Cal. July 18, 2007), aff'd sub nom. *SewChez Int'l Ltd. v. CIT Grp./Com. Servs., Inc.*, 359 F. App'x 722 (9th Cir. 2009) (citing *City Solutions, Inc. v. Clear Channel Comm'ns*, 365 F.3d 835, 840-841 (9th Cir. 2004)).

Defendant argues Plaintiffs' fraud claim fails as a matter of law, first because there is no proof of any fraudulent intent. However, "fraudulent intent must often be established by circumstantial evidence." *EduMoz, LLC v. Republic of Mozambique*, No. CV 13-02309 MMM (CWx), 2014 WL 12802921, at *22 (C.D. Cal. July 21, 2014) (quotation omitted). Here, Plaintiffs submit evidence that Yeezy personnel promised payment, received significant amounts of labor, put Plaintiffs on a rush to finish the app in one week, delayed payment, then reframed the project as volunteer work. If Plaintiffs' version of events is believed, a reasonable jury could infer fraudulent intent. *See, e.g.*, *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30-31 (1985) (noting fraudulent intent can be inferred "from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure

---

[11] Since the FEHA claims of underlying conduct (hostile work environment and discrimination) survive, Defendant's argument that the derivative failure to prevent claim also fails is moot. *See Mot.* 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.    2:24-cv-05547-MWC-E                                    Date: April 3, 2026

Title:        Shemar DaCosta et al v. Yeezy LLC et al


even to attempt performance, or his continued assurances after it was clear he would not perform").

Next, Defendant argues Plaintiff cannot show reliance on fraudulent misrepresentations, because some plaintiffs signed agreements to work voluntarily, and because Defendant never executed the asset purchase agreement. *Mot.* 28–31.

The Court disagrees. As an initial matter, the Court does not find any evidence in the record that any plaintiff signed a volunteer agreement. Moreover, Plaintiffs' fraud theory "includes representations that Plaintiffs would be paid, that the app was being acquired, that their work was being used for an official Yeezy product, that some of them would receive future opportunities, and that they should continue working through harsh conditions because compensation and recognition would follow." *Opp.* 26. Plaintiffs have submitted declaration and other evidence from which a reasonable jury could find reliance on Defendant's representations was justified. *See, e.g.*, *DaCosta Decl.* ¶¶ 12, 39, 41 (attesting that "members of the team were repeatedly told that they would be compensated for their work once the app was completed and acquired," and that 144 hours of work was not compensated).

In short, whether Defendant's conduct amounted to fraud remains a triable issue, and the Court **DENIES** the motion as to the fraud claim.

### b.        Quantum Meruit

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). "The requisite elements of quantum meruit are (1) the plaintiff acted pursuant to 'an explicit or implicit request for the services' by the defendant, and (2) the services conferred a benefit on the defendant." *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 233 Cal. Rptr. 3d 830, 852 (Ct. App. 2018) (quoting *Day v. Alta Bates Med. Ctr.*, 119 Cal. Rptr. 2d 606, 610 (Ct. App. 2002)). "To recover in quantum meruit, a plaintiff must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Taylor v. Google, LLC*, No. 22-16654, 2024 WL 837044, at *2 (9th Cir. Feb. 28, 2024) (quotation omitted).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05547-MWC-E                                      Date: April 3, 2026

Title:       Shemar DaCosta et al v. Yeezy LLC et al

Defendant argues it is entitled to summary judgment on quantum meruit, because "Plaintiffs had no basis for expecting compensation from Yeezy given the volunteer agreements and the fact they were working for a totally separate entity." *Mot.* 31-32. The Court has already rejected the argument that Defendant has shown Plaintiffs signed or entered into any volunteer agreement. A triable issue also remains as to whether Plaintiffs were, in fact, "working for a totally separate entity." *See id.*

Conversely, Plaintiffs have submitted numerous affidavits and declarations attesting that they expected compensation based on Defendant's representations. *See supra* Section II.D.v.a. Accordingly, whether both sides understood that Plaintiffs would be compensated is a question for the jury. The Court **DENIES** the motion as to the quantum meruit claim.

E.      Conclusion

The Court **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment. Summary judgment is **GRANTED** on the ATS claim as to K.S., and on the FLSA claims as to the Plaintiffs Mofokeng, Jackson-Lea, Olatunji, R.M., M.A., and K.S. The motion is **DENIED** in all other respects.

III.    Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Withdraw Deemed Admissions (Dkt. 62) and **GRANTS IN PART and DENIES IN PART** Defendant's Motion for Summary Judgment (Dkt. 77).

**IT IS SO ORDERED.**

                                                           :

**Initials of Preparer**    TJ